(No. 35295.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER SALLY, Plaintiff in Error.

*Opinion filed November 18, 1959.*

ROBERT B. JOHNSTONE, of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, GEORGE W. SCHWANER, JR., and WILLIAM H. SOUTH, Assistant Attorneys General, and FRANCIS X. RILEY, and WILLIAM W. WINTEROFF, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Walter Sally, referred to herein as the defendant, was convicted of the crime of murder in the criminal court of Cook County in a trial before the court without a jury and was sentenced to the penitentiary for a term of life im-

prisonment. A writ of error has been issued from this court to review the judgment of conviction.

Defendant contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt, that the trial court erred in immediately overruling defendant's motion for a new trial, and that there was error in the introduction of certain evidence. The only eyewitnesses to the crime were Buelah Bynum, the wife of the deceased, and the defendant. Mrs. Bynum testified that she and her husband were the owners of a three-flat apartment and lived on the second floor, while defendant and his family lived in the third-floor apartment. At about 12:30 one morning defendant knocked at the door of the Bynum apartment. Mrs. Bynum went to the door and defendant told her that he was moving out of his apartment and that he had finished moving except for the washing machine which he would pick up the next day. He gave Mrs. Bynum the key and said, "Now I will take my money." Mrs. Bynum then asked defendant about some money that she claimed defendant owed her husband and defendant replied, "I will take my money. What about it?" Mrs. Bynum then walked back to the bedroom and told her husband that defendant wanted his money and Bynum put on his robe and went to the door and talked to defendant. Defendant again asked for his money and Bynum suggested that defendant come inside and talk it over and told defendant that he owed some money for damages and some back rent. After some further conversation Bynum told defendant that he would give him the money and that defendant could forget about what he owed Bynum. According to Mrs. Bynum defendant then said, "No, you all keep the money, because you all will make somebody kill you about that money and I will kill you in a minute about my money." Mrs. Bynum testified that she then heard a shot and her husband called out that he was shot. On cross-examination it was brought

out that the money which defendant had demanded was a security deposit which defendant had paid to Bynum.

Defendant testified that he had lived in the third-floor apartment for about 13 months and at the time of the crime he was in the process of moving from that apartment. He had moved all of his furniture out of the apartment by about midnight and had removed all of his personal property except a diaper pail and a rifle and he was carrying these items down the stairs on his last trip. He set these articles down on the stairs and knocked at the Bynums' door and told Mrs. Bynum that he had completed moving except for getting his washing machine out of the basement and asked Mrs. Bynum about his security deposit. Mrs. Bynum then asked him about the money that defendant owed her for extra rent for the use of the basement and defendant told her that he didn't feel that he owed that money since his wife hadn't been able to use the basement. Defendant testified that Mrs. Bynum then went into the bedroom and got her husband. He came out into the hall and closed the door to the apartment and the two men then had a further discussion about the security deposit and the money that Bynum claimed defendant owed him. Defendant testified that at no time during the conversation with Bynum did he say thing about killing Bynum about the money. According to defendant's testimony, after Bynum had refused to give him back his money, he decided that he didn't want to have any further argument and discussion with Bynum so he picked up his diaper pail and rifle and started to walk off and said to Bynum, "Well, that's all right, forget it." Bynum told him that he would mail him his money after he figured out how much defendant had coming to him and told defendent to get out of his house. Defendant testified that Bynum made a step toward defendant like he wanted to force defendant out of the house. Bynum had his hands in the pockets of his

robe and defendant said that he saw something black in Bynum's hand which looked like it might have been a gun. Defendant testified that at that time he was afraid that Bynum was going to shoot him so he raised the rifle up and pointed it toward Bynum and it went off. He testified that he didn't know the gun was loaded and only raised it up to try to frighten Bynum. After the gun went off defendant picked up his diaper pail and ran down the stairs. In rebuttal Mrs. Bynum testified that Bynum had no gun or other object in the pockets of his robe.

The only other testimony at the trial was by police officers who arrived at the scene after the shooting. This testimony sheds no light upon the facts surrounding the shot.

It is undisputed that defendant shot and killed Bynum. At the trial defendant contended that the evidence showed that the killing was either accidental or in self-defense. On this writ of error the principal argument is that the facts justified a conviction of manslaughter only, rather than murder, since there was no proof of malice. We shall consider all of these contentions.

The circumstances which will justify a killing in self-defense are set forth in the Criminal Code, which provides as follows: "If a person kill another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary; and it must appear also, that the person killed was the assailant, or that the slayer had really, and in good faith, endeavored to decline any further struggle before the mortal blow was given." Ill. Rev. Stat. 1957, chap. 38, par. 367.

The only evidence tending to support this defense is defendant's testimony that Bynum told defendant to get out and made a step toward him like he wanted to force defendant out of the house; that Bynum had his hands

in the pocket of his robe; that defendant saw something black in Bynum's hand, which he thought might have been a gun; and that he believed that he was in danger of losing his life or suffering great bodily harm. On the other hand, Mrs. Bynum testified that when she went back to the bedroom to get her husband to talk to defendant, she handed him his robe and that there was nothing in the pockets of the robe. She also testified that defendant told Bynum he was going to kill him. Where the facts are controverted it is a question for the trier of the facts to determine whether the killing was in self-defense. (*People* v. *Porter*, 11 Ill.2d 285; *People* v. *Golson*, 392 Ill. 252.) In announcing his finding of guilty in the present case the trial judge referred to the above section of the statute and stated that he did not believe that defendant had established that the killing was in self-defense. We will not disturb his finding.

What we have said with respect to self-defense is applicable to the contention that the shooting was accidental. The trial judge stated that he certainly did not think the shooting was accidental. The credibility of the witnesses was for the trial judge to determine. He evidently did not believe defendant's testimony that the gun was accidentally discharged and, since that was the only testimony supporting the defense of accidental death, he properly held that the evidence was insufficient to establish that the death was accidental.

We turn now to a consideration of the contention that the proof showed that the crime which was committed was manslaughter, rather than murder. The principal argument here is that there was no proof of malice. In the section of the statute defining the crime of murder, the element of malice is defined as follows: "Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied when no

considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." Ill. Rev. Stat. 1957, chap. 38, par. 358.

With respect to the burden of proof in such cases, it is provided: "The killing being proved, the burden of proving circumstances of mitigation, or that justify or excuse the homicide will devolve on the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter, or that the accused was justified or excused in committing the homicide." Ill. Rev. Stat. 1957, chap. 38, par. 373.

Since the killing was proved, the burden of proving any circumstances which would excuse or justify the killing or which would reduce the crime to manslaughter was upon the defendant, unless it can be said that the State's evidence sufficiently showed that the crime amounted only to manslaughter.

Mrs. Bynum's testimony on the part of the prosecution was that defendant said he was going to kill Bynum and that immediately thereafter she heard a shot and her husband came back into the apartment, bleeding from a bullet wound. This testimony showed no justification or excuse for the killing, nor did it show that the crime was manslaughter. The burden was, therefore, upon the defendant to prove circumstances in mitigation.

As we have heretofore noted, the trial judge evidently did not believe defendant's story that he acted in self-defense. If this portion of defendant's testimony is disregarded, then the only evidence offered by defendant in an attempt to mitigate or justify the killing was that he and Bynum were engaged in an argument over the security deposit. The statute provides that malice shall be implied when no considerable provocation appears. It is well established that mere words, however abusive and provoking, do not constitute the "considerable provocation" referred to in the statute. (*People* v. *Marrow*, 403 Ill. 69; *Fried-*

*erich* v. *People,* 147 Ill. 310.) The *Marrow case* is similar to the present case. In that case the evidence showed that the defendant and the deceased were on friendly terms up to the day of the killing. On that day, the deceased made a remark about defendant's wife which defendant resented. The undisputed testimony showed that after the remark had been made the defendant approached the deceased with a heavy wrench in his hand, that the deceased raised his hands toward defendant, and that defendant then struck him with the wrench. We said, in holding that the evidence sufficiently established the element of malice, at page 75: "The deceased's remarks, while possibly uncalled for, were not derogatory nor such as would tend to arouse one to murderous passion. The fact that such words were uttered by the deceased was not sufficient provocation to relieve defendant of the consequence of his crime. Mere words do not constitute sufficient provocation for an assault, nor will provocation by words only, however opprobious, mitigate intentional killing so as to reduce the homicide to manslaughter."

In *People* v. *Johnson,* 2 Ill.2d 165, we affirmed a murder conviction where it was contended that malice was not proved. In that case, we said at page 173: "It is not necessary, to justify a conviction of murder, that a person shall have deliberately formed an intention to kill. It is sufficient if, at the instant of the assault, he intended to kill the party assaulted or if he is actuated in making the assault by that wanton and reckless disregard of human life that denotes malice."

We are of the opinion that the evidence in the present case was sufficient to sustain the finding that defendant was guilty of murder.

Defendant also contends that certain evidence was improperly admitted. A police officer testified that he found a spent bullet on a chest in the Bynums' bedroom, just below a bullet hole in the wall. The bullet was from a 30-30

calibre rifle. The officer also testified that he found a live bullet on the floor of the Bynum apartment. Both bullets were admitted in evidence over defendant's objection. We agree with defendant that, in the absence of further evidence to connect the bullets with defendant, the bullets were improperly admitted in evidence. However, in view of the fact that defendant admitted killing Bynum, we are unable to see how the introduction of the evidence in any way prejudiced defendant. We are, therefore, of the opinion that the admission of the bullets into evidence was not reversible error.

Finally, it is contended that the trial judge improperly denied defendant's motion for a new trial without continuing the motion for a hearing and without hearing argument. It is contended that if the trial judge had set the motion down for hearing on a date subsequent to the trial and had heard argument thereon, he might have imposed a less severe sentence. While it is customary, and in most cases advisable, to defer a hearing on a motion for a new trial and to permit argument thereon, it is not necessary, especially where the trial is short, is before the court, and the issues are not complicated. (*People* v. *Gambino,* 12 Ill.2d 29, 39; *People* v. *DePompeis,* 410 Ill. 587, 596; *People* v. *Moretti,* 330 Ill. 422.) Defendant's contention that the sentence might have been lighter if the judge had taken time for reflection is purely speculative. The sentence was within the limits prescribed by the legislature and was therefore proper. The trial was short and the issues were few. The immediate denial of the defendant's motion for a new trial was therefore not prejudicial.

Having reviewed the entire record and considered all of the assignments of error, we are of the opinion that defendant received a fair trial and that the evidence was sufficient to establish his guilt. The judgment of conviction is therefore affirmed.

*Judgment affirmed.*