**People of the State of Illinois, Plaintiff-Appellee, v. Arthur Cokes, Defendant-Appellant.**

**Gen. No. 52,401.**

First District, First Division.

February 17, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Harold A. Cowen, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County of Chicago (Elmer C. Kissane and James Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Arthur Cokes, was charged with the crime of murder (Ill Rev Stats 1967, c 38, § 9–1). The cause was tried before a jury and resulted in a verdict

and judgment of guilty. The court sentenced the defendant to a term of not less than 21 nor more than 28 years in the Illinois State Penitentiary.

The defendant contends, on appeal, that (1) he was improperly prevented from presenting his theory of the case to the jury; (2) the court committed prejudicial error in not calling certain witnesses; (3) the prosecutor's misconduct resulted in a trial unfair to defendant; and (4) the State did not establish defendant's guilt beyond a reasonable doubt.

The record reveals that on November 16, 1966, between the hours of 1:30 a. m. and 2:00 a. m., Calvin Gamble found the dead, nude body of Milton Campbell on the steps leading to Gamble's basement, outside his house. Gamble went back into his house and called the police. When he came back outside he saw the defendant standing near the body. He observed that the defendant had blood on the upper part of his pants and on the lower part of his shirt. After Gamble told the defendant to stay where he was, the defendant turned and fled from the scene.

Detective Dale Buehler testified that he and his partner, Detective Strocchia, arrived at the scene in response to Mr. Gamble's call. He said that he observed that the body had a deep gash in the throat. Subsequent examination showed that the body also had a bullet wound in the head. Detective Buehler then testified that his attention was drawn to blood spots and drag marks leading across the alley and that he followed them to 4955 South Vincennes. There the detective found the defendant, Alice Hall, Ruby Cokes (the defendant's wife), and McKinley Martin. The detective also found bloodstains on the floor and walls of the kitchen, in one of the bedrooms, and on various articles of clothing. At that point, Calvin Gamble, who had followed the police into the basement apartment of the defendant, told the de-

tectives that it was the defendant, Arthur Cokes, whom he had seen standing near the body. Detective Buehler then began to search the bedroom and found a knife with bloodstains on it. Ruby Cokes said that the knife belonged to her husband and the defendant nodded in the affirmative. About the same time one of the members of the crime lab recovered a revolver. Ruby Cokes said it was her husband's gun and the defendant volunteered that he had recently purchased it. After advising the defendant of his constitutional right to remain silent the detective said that Arthur Cokes accused his wife of killing the victim. She replied that he was a liar. Then the defendant pointed to McKinley Martin and said that he helped him, the defendant, carry the body from the apartment and place it in the alley. Later the defendant accused Martin of killing Milton Campbell. The detective stated that the defendant repeated the accusations against his wife and Martin at the police station. On cross-examination Detective Buehler testified that after the arrest of the defendant and Martin McKinley, he did not see Ruby Cokes again and had no knowledge of where she might be.

Donald Gunnell, a police officer assigned to the Crime Laboratory for six years, testified that he found a .38-caliber revolver under the dresser in the defendant's bedroom. He also found a .38-caliber shell casing on top of the dresser. There were bloodstains on the gun.

A stipulation was entered into between the parties that if Burton C. Nielson, a ballistics expert, took the stand he would testify that the bullet recovered from the body of the deceased was fired from the defendant's .38-caliber revolver.

Alice Hall testified that she went to the defendant's basement apartment about 8:00 a. m. on November 14 and found the defendant's wife at home. She said that she had known the defendant and his wife for about five years and had visited with them on occasion. On that

day, the witness testified, she and the defendant's wife drank with a lot of other people in the defendant's apartment. Instead of going home, Alice Hall said she spent the night in the back room of the apartment. The following day the defendant, his wife and the witness started drinking again. The defendant left to buy more liquor and when he returned he was accompanied by the deceased, Milton Campbell, and another man. Alice Hall said everyone sat down and drank, but that after a while she felt she had had enough. She then went into the back bedroom to sleep. Miss Hall stated that she was almost asleep when Milton Campbell came in the bedroom. They had sexual intercourse, but when he refused to stop when she tired, she called for the defendant. The defendant told Campbell that "I'm tired of you messing around with my wife and friends that come around here to visit me." Miss Hall said that Campbell replied that he hated "colored peoples or Negroes, or something like that . . . ." Alice Hall then said that the defendant pulled Campbell off the bed, "stomped him" and then she heard a "ping." She testified further that the defendant waved a shiny gun and told her "don't you say nothing about this you silly girl." The defendant noticed that Miss Hall had blood on her arm and she washed it off. When she looked back she saw Campbell lying on the floor. She said she got into bed again, covered her head with the bed clothes and when she peeked out she saw the defendant drag the victim out of the room. She went to sleep and the next thing she remembered was that McKinley Martin came in and sat on the bed. Alice tried to tell him what had happened, but she said she could not.

The defendant, Arthur McCullough Cokes, took the stand in his own defense. He testified that he was a junkman and that he had been married to his wife, Ruby, for three years. Cokes said he had not seen or heard from his wife since shortly after he was arrested. The defend-

ant stated that he had known Alice Hall for ten years and that Milton Campbell, the victim, had been a friend of his for four years, during which time the defendant did business with him. The defendant further testified that McKinley Martin rented a room from him and that Alice Hall spent the night of November 14 with Martin. Cokes said that on the morning in question, November 15, he went to a junkyard. When he returned home at about 11:30 a. m. he found the body of Milton Campbell in his hallway. He said that he went into his apartment, told his wife of his discovery and then went to the drugstore across the street for headache tablets. He testified later that before he went to the drugstore his wife told him "that she shot that man that was fighting in there." He tried to talk to Alice Hall, but she was too drunk to say anything. The defendant admitted owning the gun in evidence stating that he had purchased it from the victim. He testified that he kept the gun in his dresser drawer. When McKinley Martin came in from work the defendant said he told Martin what had happened and together they carried the body to the lot across the street. The defendant then stated that he does not drink and that he did not kill Milton Campbell. The defendant said that when the police officer asked him whether he had killed Campbell, he said that he had not and that he told the officer in his wife's presence that she had killed the victim and that he had carried the body out of the apartment to protect her. The defendant denied that he told the police that McKinley Martin killed Campbell and said he only told the officer that Martin helped him carry the body. At the police station, the defendant said that he told the police, in his wife's presence, that she killed Campbell and that she was a mental patient from Elgin. The defendant said his wife replied "you're telling a story on me." He also said that his wife did not tell the police in his presence that she killed Campbell.

The defendant contends that he was improperly prevented from presenting his theory of the case to the jury, i. e., he was barred from attempting to produce evidence to show that his wife committed the murder. The following excerpt from the record is cited by the defendant in support of his contention:

Q. After you purchased the gun did your wife know where the gun was?

A. Yes.

Mr. Beranek: Objection.

The Court: sustained . . . you can ask this man what he saw and observed, but not what his wife knew.

The defendant argues that when the court sustained the State's objection above, the defense counsel was undoubtedly discouraged from proceeding with a line of testimony which would have attempted to prove the wife's guilt of the murder of Milton Campbell. We find this contention to be totally without merit. The record clearly shows that after this single question the defense counsel, who was privately retained, did not pursue the matter further even though the court told defense counsel he could ask the witness what he saw and observed. Under such circumstances we believe that the trial court gave the defendant every opportunity to develop this field of inquiry.[1]

The defendant also supports his contention that he was improperly prevented by the court from presenting his theory of the case to the jury with the following excerpt from the record:

---

[1] The defendant cites People v. Lettrich, 413 Ill 172, 108 NE 2d 488, in support of his contention that the objectionable testimony should not have been refused. Since we do not need to reach the issue for which the case was cited, there will be no discussion of the case.

Q. To your knowledge, Mr. Cokes, is Mrs. Cokes in the City of Chicago?

Mr. Beranek: Objection.

The Court: Objection sustained.

██ Again, we do not feel that the court's refusal to admit the objectionable testimony denied the defendant an opportunity to explore the area further. The record reveals that the defendant did testify that he had not heard from his wife since shortly after his arrest. Also, that on cross-examination Detective Buehler testified that no charges were filed against Mrs. Cokes. He was asked:

Q. Have you had occasion to see or talk with Mrs. Cokes since your investigation of his case?

A. After the arrest of Arthur and McKinley and the visit to the area I have not seen Ruby Cokes since this time.

Q. Do you—at this time do you have any knowledge as to where she might be?

A. No. I have no knowledge whatsoever, sir.

Furthermore, even if the refusal to admit the testimony was in error, the record fails to sustain the defendant's charge that he was in any way prejudiced. A claim of prejudice cannot be based upon mere conjecture, People v. Kelley, 23 Ill2d 193, 177 NE2d 830, as is the case here. A reviewing court will not reverse a judgment of conviction because of errors which occurred at the trial unless it appears that justice has been denied or that the finding of guilt might have resulted from the error. People v. Bridges, 28 Ill2d 165, 190 NE2d 719.

██ In his second contention the defendant argues that the trial court committed prejudicial error in not insisting that Ruby Cokes and McKinley Martin be found

146

and brought in as witnesses. It is well settled in Illinois that it is the privilege of the defendant to call any witness he desires. People v. Kukulski, 358 Ill 601, 193 NE 504. At no time does it appear, however, that the defendant either attempted to subpoena these two individuals himself *or requested that the court call them as court's witnesses*. Furthermore, there is no requirement that the State call all available witnesses. People v. Dronso, 83 Ill App2d 59, 226 NE2d 460. Under these circumstances we conclude that the trial judge did not commit prejudicial error in not insisting that the defendant's wife and friend be found and brought in as witnesses and that the defendant was not denied a fair trial in this respect. People v. Huff, 29 Ill2d 315, 194 NE2d 230.

The defendant's third contention involves the allegedly prejudicial comments made by the prosecutor in his final argument to the jury. The defendant urges that the prosecutor made a blatant attempt to win the sympathy of the jury by identifying himself with them and by improperly characterizing the defendant. However, no objection was made to the prosecutor's remarks at the time of the trial. The defendant's failure to object to the allegedly improper argument at trial constitutes a waiver of the issue and he is precluded from raising the issue on appeal. People v. Asey, 85 Ill App2d 210, 229 NE2d 368; People v. Allum, 78 Ill App2d 462, 223 NE2d 187. Moreover, we have examined the remarks of the prosecutor and have concluded that he did not transcend the bounds of legitimate argument. People v. Kemp, 29 Ill2d 321, 194 NE2d 217.

The defendant also argues under his third contention, that the prosecutor's final argument improperly called attention to the fact that the defendant failed to call certain witnesses. The record discloses, however, that defense counsel in his argument to the jury pointed out that the State had failed to call the defendant's wife

and McKinley Martin, as witnesses. There was an obvious attempt by the defense counsel to cast doubt on the State's case by this method. We believe that the defense counsel, who brought this issue to the jury's attention in the first place, invited the remarks of prosecutor, and the defendant cannot now complain that such remarks were made. People v. Izzo, 14 Ill2d 203, 151 NE2d 329; People v. Wheeler, 5 Ill2d 474, 126 NE2d 228.

 The defendant's fourth and final contention is that the State failed to prove him guilty beyond a reasonable doubt. The gravamen of defendant's argument is that the testimony of Alice Hall is at variance in essential portions and, therefore, a reasonable doubt as to the guilt of the defendant is raised. It is readily apparent that the jury rejected as incredible the defendant's version of the killing and accepted the testimony of Alice Hall as true. Credibility of the witnesses and the weight to be given their testimony are matters to be determined by a jury and the reviewing court will not disturb a verdict unless it is so palpably contrary to the evidence as to justify the court in entertaining a reasonable doubt of the defendant's guilt. People v. Woodruff, 9 Ill2d 429, 137 NE2d 809. After carefully examining the record we cannot say that the defendant was not proven guilty beyond a reasonable doubt.

For the reasons given the conviction and judgment are affirmed.

Judgment affirmed.

ADESKO P. J. and MURPHY, J., concur.