THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES L. WALKER, Defendant-Appellant.

(No. 57902;

First District (2nd Division)—September 17, 1974.

Paul Bradley and Robert E. Davison, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Douglas Cannon, and Terrance McQuigg, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Defendant, James L. Walker, was charged with the murder of Gaynell Brown. He was convicted by a jury and the court sentenced him to serve 30 to 90 years. In this appeal, he presents five issues. 1. Whether the conduct of his court-appointed lawyer denied him effective assistance of counsel. 2. Whether it was prejudicial error for the trial court to exclude his testimony concerning a statement he said Gaynell Brown made a few moments after the shooting that resulted in her death. 3. Whether he was prejudiced by the closing arguments of the assistant

State's Attorneys. 4. Whether he was proven guilty beyond a reasonable doubt. 5. Whether the sentence imposed on him is excessive.

On July 24, 1971, defendant and Gaynell Brown lived in an apartment on the first floor of 5129 South Prairie Avenue in Chicago. Sometime between 10 and 11 P.M. that evening, Edith Morris was visiting on the second floor of the building when she heard loud quarreling voices coming from the apartment below. Then, she heard a shot. The next morning, at about 7:15, in response to calls from friends who were concerned about Mrs. Brown's well-being, two Chicago policemen entered the apartment in which she lived and found her on the floor of the rear bedroom. She was dead, lying face down in a pool of blood. Defendant was asleep on a bed; he appeared to be heavily intoxicated. When one policeman asked him what had happened, he replied, "What do you think happened?"

He was arrested; and while he was still in the apartment, police investigators came in, inspected it and found three spent cartridge cases. Early next morning, at a police station, the investigator advised defendant concerning his constitutional rights and questioned him. Defendant told the investigator that at about 9:30 P.M. on the evening of July 24, he and Gaynell Brown became involved in an argument which culminated in a struggle for a gun that Mrs. Brown kept under a pillow on her bed. He said that the gun went off twice and Mrs. Brown was wounded accidentally. According to defendant, he took the gun and threw it in a back yard. Later, he went with policemen back to the apartment and showed them where he threw the gun. Subsequent ballistics examinations disclosed that the three empty cartridges found in the apartment were fired by that gun. Thereafter, defendant was indicted; and on November 3, 1971, he was brought to court for arraignment. At his request, the case was continued so that a lawyer from the Chicago Bar Association could be appointed to represent him.

## I.

On December 15, 1971, a lawyer from the Chicago Bar Association, a member of its Defense of Prisoners Committee, appeared and with defendant's consent, agreed to be his court-appointed counsel. On the same day, the lawyer filed a motion for discovery. Later, he answered a similar motion by the prosecution and obtained the State's response to the motion he had filed on defendant's behalf. Then, after several continuances, and after defense counsel announced he was ready, the case was called for trial on April 3, 1972. A jury was selected; opening statements were made; witnesses were called.

Among those who testified for the prosecution was the pathologist

who performed the autopsy on Gaynell Brown. He was not an expert on the subject of powder burns; nor did he have personal knowledge of the tests which had been made of Mrs. Brown's blood for alcoholic content. However, without objection from defendant's counsel, the pathologist testified to the distance he thought the gun was from Gaynell Brown when she was shot. When he was cross-examined, defendant's counsel asked the pathologist about an examination that was made of blood taken from the dead woman's body. The State objected to the questions on the ground that the pathologist's testimony on this point would have been hearsay. Then, on five occasions, the prosecution offered to stipulate to traces of alcohol in Mrs. Brown's blood. Defendant's counsel declined the offers, he did not object to the pathologist's testimony concerning the distance between a body and a gun required for powder burns; he did not object when in summation, an assistant state's attorney argued that the gun which defendant used to shoot Gaynell Brown had to be more than 18 inches from her body and that she did not live for 2½ hours after the shooting as claimed by defendant.

Before defendant appeared as a witness, his counsel made it known that his testimony was going to include a statement the defense claimed was a dying declaration by Gaynell Brown. The State objected to the proffered testimony. To resolve the issue, the trial court held a hearing outside the jury's presence to determine whether defendant's testimony was admissible. Therefore, out of the jury's hearing, defendant testified that a moment after she was shot "[s]he [Gaynell Brown] told me she kicked the gun and told me to get this so and so out of my house 'I don't never want to see it again, I am sorry I bought it [the gun] in the first place [sic].'" After hearing defendant, the trial judge ruled that the statement was not a dying declaration, and that his testimony concerning it was inadmissible.

In this court, defendant, by other counsel, concedes that Gaynell Brown's statement was not a dying declaration. Instead, he insists that Mrs. Brown's utterance was a spontaneous declaration, an exception to the hearsay rule which his court-appointed counsel failed to recognize. From this failure, the failure of counsel to ask correct questions of the pathologist on cross-examination, the failure of counsel to object to the pathologist's direct testimony concerning the distance of the gun from Gaynell Brown's body and his failure to object to statements which the assistant State's Attorneys made in their final arguments, defendant asks us to decide whether the conduct of his court-appointed lawyer denied him the constitutionally guaranteed right to effective assistance of counsel for his defense.

■■ We begin with the rule that for a defendant to show he was

denied effective assistance of counsel in his trial, he must establish (1) actual incompetency, as reflected by the manner in which his court-appointed counsel discharged the duties of a trial attorney, and (2) substantial prejudice resulting therefrom, without which the outcome of the case would probably have been different. (*People v. Morris*, 3 Ill. 2d 437, 121 N.E.2d 810.) Failure of a lawyer to make a motion, to object to improper testimony during a trial, or to object to portions of a prosecutor's final argument, does not establish lack of competent representation. (*People v. Goerger*, 52 Ill.2d 403, 288 N.E.2d 416; *People v. Barbour*, 5 Ill.App.3d 323, 282 N.E.2d 175.) Usually, the decision of a trial lawyer not to make a motion or interpose an objection, the kind of things about which defendant complains, are matters of trial strategy, not evidence of incompetency. (*People v. Rettig*, 131 Ill.App.2d 687, 264 N.E.2d 835.) As the Alaska Supreme Court said recently, "All that is required of counsel is that his decisions, when viewed in the framework of trial pressures, be within the range of reasonable actions which might have been taken by an attorney skilled in the criminal law, regardless of the outcome of such decisions." (*Risher v. State* (Alaska 1974), 523 P. 2d 421; compare *McMann v. Richardson* (1970), 397 U.S. 759, 25 L.Ed.2d 763, 90 S. Ct. 1441; *Beasley v. United States* (6 Cir. 1974), 491 F. 2d 687.) In our judgment, the decisions of the defense attorney met this standard. The record does not show actual incompetence of counsel nor any prejudice to defendant. Therefore, we conclude that the conduct of his court-appointed lawyer did not deny defendant effective assistance of counsel.

## II.

In the brief filed for defendant, and for the first time in this case, it is argued that the statement he attributed to Gaynell Brown was a spontaneous declaration and should have been admitted by the trial court as an exception to the hearsay rule. It is strenuously urged upon us that, although evidence of the alleged statement was offered on the theory it was a dying declaration, the trial court committed prejudicial error when it excluded defendant's testimony concerning what he claimed Mrs. Brown said to him. Defendant argues that his testimony was the only way he could explain to the jury why he threw the gun away after the shooting.

■■ We need not decide whether this theory for admission of what was claimed to be Gaynell Brown's statement is the correct one. Plainly, this theory was not advanced in the trial court when defendant's testimony was offered. It is well settled that a theory for the admission of evidence different from the one advanced in the trial court cannot be urged

on appeal. (Compare *People v. Sawyer*, 42 Ill.2d 294; 251 N.E.2d 230.) Absent an offer of proof based on the theory of admissibility now advanced, the trial court properly excluded defendant's testimony concerning the statement he claimed Gaynell Brown made a few moments after she was shot. (*People v. Jones*, 121 Ill.App.2d 268, 257 N.E.2d 514.) What is more important, however, is the fact that defendant's case was not adversely affected by exclusion of this small portion of his testimony. (See *People v. Cokes*, 106 Ill.App.2d 139, 245 N.E.2d 507.) Therefore, no prejudicial error was committed by the trial court's ruling.

### III.

In their summations to the jury, the two assistant State's Attorneys in the case argued that when Gaynell Brown was shot, no call was made to the police; and therefore, she did not receive medical aid which, perhaps, would have saved her life. Then, referring to the absence of powder burns on the dead woman's body, one of the assistant State's Attorneys argued that defendant's testimony about the gun going off during a hand-to-hand encounter with Mrs. Brown defied the laws of physical science. Then, pointing to the testimony of the State's pathologist, the assistant contended that a gun shot in a hand-to-hand struggle would have left powder burns on her body. The other assistant State's Attorney argued that Mrs. Brown's wound was such that she could not have lived 2½ hours after she was shot, as defendant had claimed. Defendant contends that there was no evidence to support these argumentative assertions; therefore, he raises the issue whether he was prejudiced by the arguments which the assistant State's Attorneys made to the jury.

■■■ It is a general rule that in their final arguments, prosecuting attorneys have the right to draw all legitimate inferences from facts which have been proven; and an accused cannot complain that such deductions place him in a bad light before the jury. (*People v. Heidman*, 11 Ill.2d 501, 144 N.E.2d 580.) Statements of counsel, comments and arguments based on facts supported by proof, or which are legitimate inferences from the proof, never transcend the bounds of proper debate and thus are not to be discountenanced by the courts. (*People v. Bruce*, 344 Ill.App. 114, 100 N.E.2d 350; *People v. Phillips*, 126 Ill.App.2d 179, 261 N.E.2d 469.) Of course, whether language used by prosecuting attorneys in final argument will result in reversal of a conviction depends on the facts of the particular case. (*People v. Baker*, 365 Ill. 328, 6 N.E.2d 665.) But, statements in arguments for the prosecution will warrant reversal of a conviction only where it reasonably appears that the verdict would have been different had the statements not been made. *People v. Buckner*, 9 Ill.App.3d 1013, 293 N.E.2d 622.

In this case, careful study of the instances about which complaint is made reveals that in their arguments, the assistant State's Attorneys were only drawing reasonable inferences from the proven facts. The arguments, then, were based on the evidence. Moreover, the comments made were well within the bounds of legitimate debate. Therefore, we conclude that defendant was not prejudiced by the closing arguments of the assistant State's Attorneys. *People v. Nicholls*, 42 Ill.2d 91, 245 N.E. 771.

## IV.

■■ The evidence in this record proved that during the evening of July 24, 1971, sometime after 9:30 P.M., defendant and Gaynell Brown were in their apartment in Chicago, where they became embroiled in an argument. According to defendant, Mrs. Brown attacked him with an iron, pulled a knife on him and reached for a gun he knew was under a pillow. In the struggle that followed, three shots were fired and Mrs. Brown was wounded. Defendant threw the gun into a back yard, went to the home of two friends and told them he had hurt Gaynell Brown. After unsuccessfully seeking help, defendant returned to the apartment, took two tablets of a painkiller and went to sleep. When, the next morning, two Chicago policemen awoke him and asked what had happened, his reply was "What do you think happened?" There was no iron or knife in the apartment; but three empty cartridges were found. There were no powder burns on Gaynell Brown's body; but the fatal gunshot wound was present. The gun was where defendant had thrown it; and tests proved it fired the three cartridges found in the apartment. Defendant's testimony established that the gun propelled the bullet which killed Gaynell Brown. In our judgment, this evidence, as found by the jury in its verdict, proved defendant guilty of murder, beyond a reasonable doubt. *People v. Sally*, 17 Ill.2d 578, 162 N.E.2d 396; *People v. Jersky*, 377 Ill. 261, 36 N.E.2d 347; *People v. Mallory*, 101 Ill.App.2d 207, 242 N.E.2d 306.

## V.

It is without doubt true that imprisonment for a term of 30 to 90 years, for any crime, is a long sentence. And contemporary American literature in the fields of penology and corrections abound with thoughtful questions concerning the efficacy if not the morality of such sentences. (See Randolph, *Are Long Sentences Necessary?*, 21 Am. J. Correct. 4 (1959); Murrah & Rubin, *Penal Reform and the Model Sentencing Act*, 65 Colum. L. Rev. 1167 (1965); George, *An Unsolved Problem: Comparative Sentencing Techniques*, 45 A. B. A. J. 250 (1959); Frankel, *Lawlessness in*

*Sentencing*, 41 U. Cinn. L. Rev. 1 (1972); Symposium, 11 Am. Crim. L. Rev. 1-372 (1972).) In fact, the American Bar Association in its recent study of standards for criminal justice has urged legislatures to recognize "that in many instances in this country the prison sentences which are now authorized, and sometimes required, are significantly higher than are needed in the vast majority of cases in order adequately to protect the interests of the public." (A.B.A. Standards Relating to Sentencing Alternatives § 2.1(d) (1968).) The Association goes on to recommend that, with the exception of certain type of offenders and of very few particularly serious offenses (murder being the only offense on which its advisory committee unanimously agreed), "* * * the maximum authorized prison term ought to be five years and only rarely ten." A.B.A. Standards Relating to Sentencing Alternatives § 2.1(d) (1968).

■■ In this State, however, long prison sentences are an integral part of our criminal justice system. The legislature has provided for them; and our Supreme Court has held that when they are within statutory limits, reviewing courts should not disturb them unless they greatly vary from the purpose and spirit of our law or they are manifestly in excess of the constitutional provisions which require that all penalties be proportioned to the nature of the offense. (*People v. Fox*, 48 Ill.2d 239, 269 N.E.2d 720.) Only recently, bound as we are always by applicable law and the decisions of our supreme court, we sustained without modification, a 100 to 199 year sentence for murder. *People v. Malcom*, 14 Ill. App.3d 378, 302 N.E.2d 352.

■■ In this case, during the hearing in aggravation and mitigation, the State proved that the killing of Gaynell Brown was defendant's second criminal homicide. He admits that in 1943 he was found guilty and sentenced to the penitentiary for manslaughter and that in 1950 he was convicted of armed robbery and sentenced to a term of imprisonment. Prior convictions of a defendant are relevant and pertinent in determining the appropriate sentence which a trial court should impose on him for a crime of which he is convicted. (*People v. Mace*, 79 Ill.App.2d 422, 223 N.E.2d 725.) The trial court in this case obviously took into account defendant's two previous felony convictions and imposed a sentence within the limits of the murder statute. (Compare *People v. Hart*, 132 Ill.App.2d 558, 270 N.E.2d 102.) It is our opinion that the sentence imposed is not excessive. (See *People v. Holmes*, 12 Ill.App.3d 713, 298 N.E.2d 738; *People v. Richards*, 120 Ill.App.2d 313, 256 N.E.2d 475.) The judgment is affirmed.

Affirmed.

HAYES, P. J., and STAMOS, J., concur.