[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
During the course of a jury trial the Petitioner entered a nolo contendre plea to assault in the second degree with a fire arm and was found guilty by a jury on the remaining count of murder in violation of 53a-54a(a). The trial court sentenced him to sixty (60) years for the murder count and five (5) years for the assault count concurrent to each other but consecutive to his then existing sentence. The Petitioner's appeal resulted in his conviction for the charge of murder being affirmed. State v. Veal, 201 Conn. 368,517 A.2d 615 (1986). The Petitioner claims in this writ of CT Page 7460 habeas corpus that his confinement for the murder conviction is illegal in that he was deprived of his constitutional right to effective assistance of counsel under the United States and Connecticut Constitutions.
The Petitioner further claims that the failure to raise claims of ineffective assistance of counsel is not a deliberate bypass of the appellate remedies which would preclude review in a habeas proceeding. See State v. Gethers, 193 Conn. 526, 541, 480 A.2d 435 (1984). In State v. Leecan, 198 Conn. 517, 541-42 (1986), in discussing the bypass issue, the court held that:
 On further consideration, however, we have decided to lower the barrier to habeas corpus relief. It is preferable that all of the claims of ineffective, assistance, those arguably supported by the record as well as others requiring an evidentiary hearing, be evaluated by the same trier in the same proceedings . . . In view of this the modification of our procedure in regard to ineffective assistance claims, we shall not review at this time even the portion of the defendant's ineffective assistance claims that contends is adequately supported by the record. Though we have resolved his other claims of error, we believe that his ineffective assistance claims should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify.
It is clear from Leecan that there is no question of deliberate bypass where the issue is ineffective assistance of counsel.
I. THE PETITIONER CLAIMS INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE FIRST AND EIGHTH OF THE CONNECTICUT CONSTITUTION.
In order for a Petitioner to prevail on a claim of ineffective assistance of counsel, it is necessary that the petitioner meet the criteria established in Strickland v. Washington, 466 U.S. 668, 80 L.Ed.2d 674, 105 S.Ct. 2052. Strickland held that there are two components, namely performance and prejudice, to a claim of ineffective assistance of counsel that have to be met in order to require reversal of a conviction: CT Page 7461
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudices the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. (emphasis provided).
Id. at 687.
Strickland held that the role of the Court in an ineffective assistance claim to be as follows:
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a Court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy'"
Id. at 689.
 ". . . counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."
Id. at 690.
II. BURDEN OF PROOF CT Page 7462
In a habeas corpus petition the Plaintiff has the burden of proof of establishing the underlying facts that form the basis of the claimed violation by a fair preponderance of the evidence. Arey v. Warden, 187 Conn. 324, 331 (1982), Blue v. Robinson, 173 Conn. 360, 370 (1977).
III. FACTS
The evidence adduced at the jury trial was summarized by the Supreme Court as follows:
 During the evening of July 30, 1983, a number of people were sociably playing cards at a private home in Hartford. When additional visitors arrived around 11:00 P.M., the card game broke up and four of the visitors, the Defendant, another man and two women, then left the house. As they were walking away from the house, the Defendant, without visible provocation, fired a shot at one of the women, who had formerly been his girlfriend. After the victim fell to the ground, the Defendant fired additional shots at her at close range. The victim died at St. Francis Hospital without ever having regained consciousness. In firing at the victim, the Defendant also hit the other woman, who suffered a bullet wound in her arm. The Defendant fled from the scene of the crime but was apprehended later that evening by the Hartford police. State v. Veal, supra, 370.
Petitioner's relationship with the decedent was tumultuous, at best. Petitioner had told both his trial counsel and counsel's investigator about the relationship. Petitioner and the decedent had lived together in Pennsylvania and in Los Angeles. Their relationship included acts such as the decedent throwing lye in the Petitioner's face while decedent's niece stabbed Petitioner. Petitioner further had been hit by the decedent with a telephone. Finally, petitioner was informed by his mother that the decedent had made sexual advances on her. Petitioner further provided trial counsel with names of potential witnesses who could testify regarding his relationship with the decedent.
Trial counsel's investigation found that 90% of the acts of violence occurring during this tumultuous relationship were inflicted by the Petitioner upon the decedent, or were best described as occurring during mutual combat. Further, the witnesses Petitioner had named were reluctant to testify. Trial counsel was also informed by Petitioner that Petitioner CT Page 7463 would not accept a preferred plea bargain involving a plea to Murder; the Petitioner assessed his conduct on the evening of July 31, 1983 as a Manslaughter.
The claims of ineffective assistance of counsel are that 1) trial counsel failed to raise and present an affirmative defense of extreme emotional disturbance when adequate pre-trial investigation by counsel would have disclosed that this was the only viable defense available; 2) that trial counsel presented, as the sole defense, a defense of apologia; and 3) that trial counsel failed to properly object on hearsay grounds concerning threats made by the Petitioner against the victim.
These claims will be considered seritiam.
IV. THE PETITIONER'S CLAIM THAT TRIAL COUNSEL FAILED TO RAISE AND PURSUE AN AFFIRMATIVE DEFENSE OF EXTREME EMOTIONAL DISTURBANCE WHEN ADEQUATE PRE-TRIAL INVESTIGATION BY COUNSEL WOULD HAVE DISCLOSED THAT THIS WAS THE ONLY VIABLE DEFENSE AVAILABLE
A. EXTREME EMOTIONAL DISTURBANCE DEFENSE LAW
Extreme Emotional Disturbance is an affirmative defense which results in a mitigation of the murderous act to Manslaughter in the First Degree. Connecticut General Statutes, Section 53a-55(a)(2). The Connecticut Supreme Court in State v. Elliott, 177 Conn. 1 (1979) stated the basis for this defense as follows:
 In determining whether the defendant has proven the affirmative defense of an extreme emotional disturbance by a fair preponderance of the evidence as a mitigation of murder to manslaughter, the jury must find that: (a) the emotional disturbance is not a mental disease or defect that rises to the level of insanity as defined by the Penal Code; (b) the defendant was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness; and (c) the defendant had an extreme emotional reaction to it, as a result of which there was a loss of self-control, and reason was overborne by extreme intense feelings, such as passion, anger, distress, grief, excessive agitation or similar emotions. Consideration is given to whether the intensity of these feelings was such that his usual intellectual controls failed and the normal rational thinking for that individual no longer CT Page 7464 prevailed at the time of the act. In its charge (to the jury), the trials court should explain that the term "extreme" refers to the greatest degree of intensity away from the norm for that individual. State v. Ellicott, supra, pp. 9-10.
The reasonableness of the defendant's act is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believes them to be. Elliott, supra, p. 10.
Extreme Emotional Disturbance does not require a special plea, notice or other formal assertion by a defendant. State v. Marino, 190 Conn. 639, 651 n. 11 (1983). The defense need not be asserted solely through the use of psychiatrists. Marino, id, See State v. Asherman, 193 Conn. 695,478 A.2d 227, cert. denied, 470 U.S. 1050, 105 S.Ct. 1749,84 L.Ed.2d 814 (1984).
B. ADDITIONAL FACTS
The Court finds the following additional facts regarding this issue. After the Petitioner informed his trial attorney that he was interested in pursuing the defense of extreme emotional disturbance, trial counsel had the Petitioner examined by Dr. Walter Borden, a forensic psychiatrist. Dr. Borden concluded that there was no clinical evidence to suggest either an insanity defense or an extreme emotional disturbance defense. Trial counsel then had the Petitioner examined by another forensic psychiatrist, Dr. John Felber. Dr. Felber also concluded that there was no clinical basis for an extreme emotional disturbance defense. The investigation conducted by trial counsel and trial counsel's investigator included the contacting of witnesses who could testify regarding the relationship between the Petitioner and the decedent.
This Court concludes that trial counsel did conduct an adequate factual investigation regarding this issue.
Trial counsel was familiar with the facts of Petitioner's relationship with the decedent. Once the Petitioner expressed an interest in the extreme emotional disturbance defense, trial counsel arranged for the initial examination by Dr. Borden. Dr. Borden was chosen because he was "extremely liberal", was "defense-oriented"; and "suffice it to say, if it's there, he'll find it." When Dr. Borden's report indicated no clinical evidence to support the defense, trial counsel both pressed Dr. Borden for a re-examination and arranged for an examination by Dr. Felber, another CT Page 7465 psychiatrist who was extremely liberal, defense-oriented, and who would "find it where it doesn't exist." Dr. Felber reached the same conclusion. Trial counsel also pointed out that in his experience, experts make deep impressions on juries, who are otherwise skeptical of psychiatric defenses. Because of his knowledge of the law in this area regarding State experts examining criminal defendants, his experience with the skepticism of jurors towards psychiatric defenses and his knowledge of the quality, the philosophy and the persuasiveness of the conservative experts generally retained by the State, trial counsel decided that an "expertless" defense of extreme emotional disturbance would be refuted by the State. Finally, at the time of the trial, experts could actually express their opinions on the presence or absence of the mental status required by the crimes. Cf. Connecticut General Statutes, Section 54-86(i).
In Fair v. Warden, 211 Conn. 398 (1989) the claim made regarding ineffective assistance of counsel arose out of the failure of counsel to request a lesser included offense charge. In finding that such a failure did not establish the first prong of Strickland, namely the performance prong, the Fair Court held in part at pages 403 — 404:
 Establishing that counsel's performance was deficient `requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment.' Strickland v. Washington, supra, 687. To demonstrate this `the defendant must show that counsel's representation fell below an objective standard of reasonableness.' Id., 687-88. `In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.' Id., 688. `Judicial scrutiny of counsel's performance must be highly deferential,' and courts `must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' Id., 689, quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83
(1955), reh. denied, 350 U.S. 955, 76 S.Ct. 340, 100 L.Ed. 831 (1956); see also Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3123-26, 97 L.Ed.2d 639
(1987); Darden v. Wainwright, 477 U.S. 168, 185-86, 106 S.Ct. 2434, 91 L.Ed.2d 144 (1986); Aillon v. CT Page 7466 Meachum, supra, 357; Valerino v. Bronson, 209 Conn. 75, 86, 546 a.2d 1380 (1988); Levine v. Manson, 195 Conn. 636, 640, 490 A.2d 82 (1985). A majority of jurisdictions addressing the issue have held that counsel's failure to request a lesser included offense instruction does not necessarily deprive a defendant of reasonably effective assistance of counsel. See, e.g., Kubat v. Thieret, 867 F.2d 351, 364-65 (7th Cir. 1989); United States v. Hall, 843 F.2d 408, 413 (10th Cir. 1988); Woratzeck v. Ricketts, 820 F.2d 1450, 1455
(9th Cir. 1987); Pride v. State, 285 Ark. 89, 91, 684 S.W.2d 819 (1985); Young v. State 482 N.E.2d 246, 251 (Ind. 1985); Morgan v. State, 384 N.W.2d 458, 460-61 (Minn. 1986); Codianna v. Morris, 660 P.2d 1101, 1113 (Utah 1983). It may be sound trial strategy not to request a lesser included offense instruction, hoping that the jury will simply return a not guilty verdict. See, e.g., State v. Asherman, 193 Conn. 695, 729, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985) (defendant objected to trial court charging the jury on lesser included offense).
Trial counsel made a strategic choice to not pursue the extreme emotional disturbance defense after a thorough investigation of the law and the facts. Because of the calculated, logical progression that trial counsel went through in analyzing the problem of whether to pursue an extreme emotional disturbance defense, the Petitioner has failed to overcome the strong presumption that the action of not pursuing the defense was sound trial strategy.
Just as it may be sound trial strategy not to request a lesser included offense instruction (Fair, supra), so to it is sound trial strategy not to pursue an extreme emotional disturbance defense where there is no hope of succeeding with such a defense.
V. THE PETITIONER'S CLAIM THAT TRIAL COUNSEL PRESENTED, AS A SOLE DEFENSE, A DEFENSE OF APOLOGIA
In support of that claim the petitioner makes the following argument:
 Counsel testified at the trial of this petition that he considered a number of potential defenses, both fact-based and based on mens rea. In the course of pre-trial preparations, counsel CT Page 7467 eliminated all but one of the "defenses" considered, settling on an explanatory defense which he characterized as "apologia". Specifically, counsel testified that he endeavored to explain the defendant's conduct, based on past mistreatment and difficulties with the decedent, thereby eroding the element of intent, and thus obtain an instruction on a lessor included offense. The "goal" or "mission" of the defense, joined by both counsel and client, was to obtain a conviction for manslaughter, and not necessarily an acquittal. Counsel further testified that he hoped to present sufficient evidence to justify an instruction as to Manslaughter First Degree, Conn. Gen. Stat., Sec. 53a-55. Specifically, he referred to subdivision (1) of that statute which involves culpability for a death resulting from an act intended to cause serious physical injury. Such a lesser included instruction was in fact given by the court at trial. No exception was taken to any portions of the charge, nor were any written requests to charge filed, by the defense. Counsel in his testimony freely acknowledged that this was the only manslaughter charge requested, that being under subdivision (1). He specifically disavowed any reliance upon subdivision (2) (extreme emotional disturbance), or subdivision (3) (reckless conduct). It is the contention of the petitioner, supported by the expert testimony of Attorney Schoenhorn, and conceded by petitioner's trial counsel, that "explanation" or "apologia" is not a valid or recognized defense to a charge of murder. Yet trial counsel, even in his testimony before this court, steadfastly maintained that this "defense" was the only such one available, that he "did everything that could be done to try and fulfill" the mission to reduce murder to manslaughter, that he "had to focus in on Sub-division One" of the manslaughter first degree statute; that "[i]t did not make any difference how Judge Barry got" to manslaughter in the first degree; that he was "hoping for [a] lessor included offense"; that "it took a bit of imagination to try and mount that one"; and that the "only thing [he] could hope for, as any defense attorney hopes for, is lessor included offense." As pertains to this aspect of the case, the salient question is therefore: Was the advancing of the "apologia" defense, admittedly a non-recognized CT Page 7468 "defense", in favor of the affirmative defense of extreme emotional disturbance, a "strategic" or "tactical" decision by trial counsel, virtually unassailable in habeas corpus proceedings alleging ineffective assistance of counsel? Or was the use of "apologia", or "explanation", as a defense, the abdication — and not the exercise — of professional judgment? Cf. McQueen v. Swenson, 498 F.2d 207 (8th Cir. 1974). The law of this state, as it then existed, together with the facts, as they were then known, readily confirms that the latter, and not the former, was the case here. The advancement of "apologia", to the exclusion of all other defenses, reflected not a strategic choice, but a choice founded upon a misunderstanding of the law, lack of adequate preparation, lack of diligence, or some combination of all three; counsel utilized that which did not exist, and that which did exist, he failed to utilize.
The Court is not pursuaded by that argument.
A similar argument was made in Fair, supra. where the court at pages 405 — 406 stated in part as follows:
 At the habeas hearing, trial counsel testified that he believed the petitioner had no viable defense to the robbery charge and that, given the evidence, he "was very doubtful that an instruction on lesser included [offenses] would be given" Trial counsel stated that he had concluded, early in the trial, that the petitioner "had virtually no hope . . . of beating the robbery charge." While he counseled the petitioner to accept the plea bargain offered by the state, the petitioner decided he wanted a trial and, moreover, wanted to testify. Trial counsel warned that the jury would most likely convict the petitioner on both robbery and escape charges, although it was possible, as the petitioner believed, that, given a chance to tell his story, he might convince the jury not to convict him on the escape charge.[8]
 Trial counsel also testified at the habeas hearing that he did not pursue a lesser included offense instruction because he believed there was overwhelming evidence supporting the robbery charge. He explained: "[I]t's very important for me to try preserve some integrity with the jury and to the extent I can [I] do that by not antagonizing CT Page 7469 them or by not suggesting scenarios that they find totally implausible or ridiculous." Thus, trial counsel admitted at the habeas hearing that his defense was essentially a plea for juror sympathy.[9]
Counsel made a strategic choice to rely as fully as possible on the Petitioner's acceptance of responsibility for his crime. His strategic choice was well within the range of professionally responsible judgment as was his defense of essentially a plea for juror sympathy.
VI. THE PETITIONER'S CLAIM THAT TRIAL COUNSEL FAILED TO PROPERLY OBJECT ON HEARSAY GROUNDS CONCERNING THREATS MADE BY THE PETITIONER AGAINST THE VICTIM.
In support of this claim the Petitioner makes the following argument:
 During the petitioner's trial for murder, the jury heard testimony from three witnesses (Lillian Newton, Willie May Slayton, and Vanessa Dunston) who were allowed to relate the substance of conversations with the decedent shortly before her death. In these conversations, the decedent allegedly recounted threats made against her by the petitioner. The testimony in all three instances was allowed to go before the jury without any limitation as to the use which could be made of it. In each instance, trial counsel objected on the grounds that the statements were irrelevant, and additionally relied upon the rule of evidence that even relevant testimony is inadmissible if its prejudicial effect outweighs its probative value. No objection was raised, in any of these instances, on the grounds of hearsay; indeed, the trial court specifically inquired if counsel was relying on a hearsay claim, and the court "repeatedly was assured that hearsay was not an issue." State v. Veal, supra, 201 Conn. at 375. On direct appeal, the Supreme Court refused to grant plenary review of the claim that the admission of this testimony was erroneous for reasons relating to hearsay, on the ground that the objections on this basis were not articulated at trial. Ibid. Apart from considerations related to the prejudice visited upon petitioner by counsel's failure to articulate a hearsay objection, the crux of the issue as to this aspect of the case is as follows: Is there any strategic or tactical basis discernible which would insulate the failure to CT Page 7470 raise such an objection from a finding of incompetence? Petitioner submits that no such basis exists.
The Court is not pursuaded by that argument.
In Levine v. Manson, 195 Conn. 636 (1985) a petition for writ of habeas corpus was brought alleging ineffective assistance of counsel based in part on trial counsel having failed to object to certain evidence being introduced. In discussing that claim the Levine court stated in part at page 648 as follows:
 It is claimed that trial defense counsel should not have let evidence come in that the petitioner had a number of guns. Although trial defense counsel conceded that such questioning was irrelevant, we point out that "[t]he decision of a trial lawyer not to make an objection is a matter of trial tactics, not evidence of incompetency." In re King, 133 Vt. 245, 250, 336 A.2d 195 (1975); see People v. Walker, 22 Ill. App.3d 711, 715, 318 N.E.2d 111 (1974).
The Court also makes the following additional findings of facts regarding this issue. Three days before the murder, Petitioner told Willie Mae Slayton that he was going to kill "that black bitch" (the victim); on the night of the murder, Petitioner tried to pick a fight when he arrived at the card game; while playing cards, Petitioner kept reaching under the table, "messing with his leg"; when asked what the problem was, he replied "I just got something to do" (id); as the card game broke up and the parties left, Petitioner pulled something out of his sock, fired a shot, and the victim fell; Petitioner ran to the victim and when he reached her, he bent over head and kept firing the gun, saying "Bitch, I finally got you. Bitch, I finally got you." There was a total of seven different bullet tracks, three of which involved the brain, any one of which could have caused death by itself. When arrested a short time later, Petitioner was asleep; Petitioner told Detective Pasquerell that he had shot the victim because "he had just about had it with her (the victim)."
The Court finds that there is no evidence of prejudice to the Petitioner from allowing the statements in question to have been admitted without having objected on the grounds of hearsay.
In summary, the Court finds that the Petitioner has CT Page 7471 failed to make the required showing of either deficient performance or sufficient prejudice. The Petitioner had a fair trial and he has not sustained his burden of proving a violation of his constitution right to the effective assistance of counsel under either the United States Constitution or the Connecticut Constitution. Petitioner has made no showing that the justice of his trial was rendered unreliable by a breakdown in the adversary process caused by deficiencies in counsel's assistance.
ORDER
The petition for writ of habeas corpus is ordered dismissed.
AXELROD, J.