(No. 23818.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANNE BAKER, Plaintiff in Error.

*Opinion filed December 16, 1936—Rehearing denied Feb. 10, 1937.*

SHAW, J., HERRICK, C.J., and FARTHING, J., dissenting.

GEORGE T. LIDELL, and JOSEPH T. HARRINGTON, for plaintiff in error.

OTTO KERNER, Attorney General, ROBERT E. NASH, State's Attorney, A. B. DENNIS, MAX WESTON, and ALFRED B. LOUISON, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

By this writ of error plaintiff in error seeks reversal of a judgment of the circuit court of Winnebago county entered against her on an indictment for larceny. The grounds on which reversal is sought are, that the evidence is insufficient to prove the crime of larceny; that errors were committed by the trial court in permitting improper examination of plaintiff in error and in the admission of evidence and instructing the jury, and that prejudice against the defendant was caused by improper remarks by the State's attorney in argument. The indictment charged plaintiff in error with the larceny of one woman's silk suit of the value of $19.75 and two silk pajama suits, each of the value of $10.95, the property of D. J. Stewart & Co.

There is little dispute as to the facts. Counsel's argument as to the sufficiency of the evidence is based on de-

ductions which they say are to be drawn from the facts proved. The store of the complaining witness is located in the city of Rockford and occupies several floors connected by stairways and elevators. During the afternoon of April 14, 1936, plaintiff in error, while on the third floor of the store, picked up the property alleged to have been stolen by her and walked down the stairs to the second floor and into the rest room on that floor. Later she deposited them on a table in the rest room. Witnesses for the People who were employees of the Stewart Company testified to having seen plaintiff in error come down the stairway carrying her coat on her left arm and that she was tucking the coat in at the bottom. An employee also testified that she saw plaintiff in error come out of the rest room with her coat on; that she carried her hand across her abdomen, and the witness noted what she characterized as a "bunch" at that place, by reason of which the coat "stuck out;" that plaintiff in error approached the counter where the witness was standing, and upon being asked if she wanted something made no reply but returned to the rest room. The witness followed her. Plaintiff in error went into one of the toilet rooms and witness went into an adjoining toilet. The witness, by standing on the stool, was able to look over the partition into the toilet occupied by plaintiff in error but did not see what, if anything, she was doing; that the latter thereafter walked out into the rest room and sat down by the table; that the witness walked away for a minute, and on returning to the rest room saw the silk suit and two silk pajama suits lying on the table. Plaintiff in error was standing by it. She went from the rest room to the elevator and thence to the first floor. Another witness, also an employee, went into the rest room at the time plaintiff in error was there and saw her come out of one of the toilet booths, walk to the table, open her coat, and the silk suit and two pajama suits fell from her coat onto the table. Another witness, an officer

of the complaining witness' company, testified that he saw plaintiff in error in the rest room standing by the table with the articles of clothing upon it. He suggested that she remain there; that she made no reply but walked out of the room; that he followed her down the elevator to the first floor, where she walked toward the back door of the store and asked the witness to let her go, and that he told her he would not. She went out into the alley, and the witness seeing a policeman cross the alley on a near by street, whistled to attract his attention, whereupon plaintiff in error ran down the alley in the opposite direction and disappeared. He later saw her in a restaurant near the store, where she was arrested and taken to the police station. He described her as very nervous. One witness, a customer in no way connected with the store, testified that she saw plaintiff in error take articles from one of the tables and put them underneath her coat. The value of the articles in question was fixed by witnesses at $8.95 per suit for the pajama suits and from $12.75 to $19.75 for the silk suit.

Plaintiff in error admitted that she picked up the three articles but testified that she had her coat on and placed the articles over her arm in plain sight, walking from the third floor to the second floor and making no effort to conceal them; that when she entered the rest room she laid the garments down on the table and went into the toilet room. She testified that at no time did she have her coat off. She stated that she did not take the articles with any intention of stealing them, and that she had money enough to pay for the articles if she had selected the ones she wanted. She testified that her name was June Wilson, and that she gave the name Baker at the police station because the police accused her of taking the goods. The jury found her guilty and found the value of the property to be $37.65.

In support of their contention that the evidence was insufficient to prove the crime of larceny, counsel for plaintiff in error contend that as the evidence conclusively shows

that the clothes were never taken from the premises by her nor by anyone acting for her there could be no larceny, and, since an intent to steal is indispensable to the conviction of larceny her conviction is erroneous, there not being sufficient evidence in the record to establish, beyond a reasonable doubt, that she intended to steal the goods.

Larceny is defined by the Criminal Code as the felonious stealing, taking, carrying, leading, riding or driving away the personal goods of another. An essential element of larceny is a felonious taking by which the owner is deprived of possession and the thief acquires possession for an appreciable period of time, though such period may be but for a moment. It has been held that where the thief, having taken possession of the property and on being discovered abandons or returns it, he nevertheless has committed larceny. One who takes the goods of another and places them in a place convenient for removal is guilty of felonious taking of property. So where one, with intent to steal, takes property from the place where it is regularly kept the crime is complete though he is detected and stopped before the goods are actually carried from the owner's premises. Any change of location whereby the control of the article is, with intent to steal, transferred from the true owner to the thief is sufficient evidence of taking away. (*People* v. *Lardner,* 300 Ill. 264; *Lundy* v. *State,* 60 Ga. 143; *State* v. *Wilson,* 1 N. J. L. 439.) When the plaintiff in error took the articles of wearing apparel and carried them from one floor to the next, secreting them as the People's witnesses testified she did, she was exercising complete and exclusive control over them. The fact that her possession was brief and the goods were not removed from the store is immaterial. *People* v. *Lardner, supra.*

Plaintiff in error denied the existence of the felonious intent necessary to constitute the crime of larceny. Intent may seldom be proved by direct evidence for the reason that one may not know what is in the mind of another,

but intent may be deduced from acts committed and circumstances in evidence. The jury who heard the testimony in this case found plaintiff in error guilty of larceny. To so find they necessarily also found that her acts showed an intent to deprive the owner of this property. The evidence is conclusive that her actions were not those of a prospective customer desiring to purchase or to make inquiry concerning the goods which she had in her possession but rather those of one who feloniously intended to steal the articles. We are convinced, on review of this record, that the verdict of the jury finding plaintiff in error guilty of larceny is abundantly justified by the evidence.

It is also contended that the court erred in permitting improper cross-examination of plaintiff in error. On direct examination she gave her name as Anne Baker. On cross-examination she said her name was June Wilson. She was then asked whether or not she had used the name of Mader, also the names of Julia Roberts, Anna Mae Harding and June Betty Wilson. This line of questions was objected to and the objection was overruled. The questions as to aliases other than those under which plaintiff in error was indicted were improper and any objection made thereto should have been sustained. The abstract of record shows no objection to such questions other than that pertaining to use of the name "Mader." In the condition of this record we are unable to see how any other verdict than that returned could have been the verdict of the jury had the objection to these questions been sustained. The error, therefore, was not such as to require reversal of this judgment.

Complaint is also made of arguments of the State's attorney. The language objected to was: "This woman is a professional shoplifter. She has been through the mill many times before when she refused to answer questions. She knew what her rights were. It isn't the first time she

has been questioned by the police. · She knew she didn't have to talk." The court sustained counsel's objection to this line of argument and instructed the jury to disregard the statements. Counsel for plaintiff in error say, however, that this did not remove the effect of the argument and that it tended to inflame the minds of the jury against the defendant. The rule is that it is the duty of the State's attorney to treat a defendant fairly. This rule applies to his argument to the jury as well as to the ·introduction of evidence. Whether language of the State's attorney used in argument will result in the reversal of· a judgment of conviction, however, depends upon the particular record before us. This court has held that where the jury could not, under the record, have reached a different verdict had no such errors intervened, errors on the trial do not always justify reversal. (*People* v. *Black,* 317 Ill. 603.) The verdict of a jury will not be set aside on such ground unless from the record it can be seen that another verdict might have been reached had not such error intervened. The court must be able to see that the argument of counsel created prejudice which contributed to the return of the verdict. (*People* v. *True,* 314 Ill. 89.) No hard and fast rule as to what conduct of the State's attorney amounts to error requiring reversal can be applied in all cases. The conduct complained of must be considered in view of the record in each particular case. Counsel for plaintiff in error have cited numerous cases where the misconduct of the State's attorney has resulted in reversal of the judgment. In those cases it was apparent, in view of the condition of the record, that by the conduct of the State's attorney the passion and prejudice of the jury were aroused and that the accused did not have a fair trial. It ought not be necessary for the court to reprimand counsel for the People in a criminal case. While it is true that in the heat of the trial mistakes are inadvertently made, yet the duty resting upon the State's attorney to accord to the accused his rights

under the law is such that care should be exercised, and this court will not hesitate, in any case where it feels that such misconduct may have had the effect of arousing the passion and prejudice of the jury, to set aside a verdict so procured. Here plaintiff in error was so conclusively proved guilty that we are unable to see, on a review of this record, how the jury could have arrived at any other verdict had this misconduct of the State's attorney not occurred. A portion of the quoted statement may be excused as the argument of a reasonable deduction, though not all of it. The guilt of the accused having been conclusively shown, and the only question for decision by the jury being that of the guilt of the accused, we would not be justified in remanding this case for re-trial on this ground.

Plaintiff in error's counsel contend that it was error to give People's instruction No. 1, which told the jury that they should find the plaintiff in error guilty if they believed, beyond a reasonable doubt, that she did steal, take or carry away the goods described in the indictment. The objection to this portion of the instruction is that the goods were not carried away. This objection conforms to the position taken by counsel for plaintiff in error that it was necessary to carry the goods from the store in order to constitute larceny. What has been said in this opinion as to that position answers the contention of counsel as to this language of the instruction. It is next contended that this instruction is erroneous in that it stated that if the evidence proved the property of some value it was sufficient to find the plaintiff in error guilty in the manner and form as charged. The argument is, that there is a dispute in the record as to the value of the property because the People's evidence varied between the cost and retail price of the goods. Such variance, however, does not constitute a dispute as to the value of the property, and there is no evidence in the record that the property taken was of a value other than that testified to by witnesses for the People.

People's instruction No. 4 is also objected to for the reason that it told the jury that circumstantial evidence is legal evidence. The argument is that the evidence in this case was all direct, and there being no circumstantial evidence showing her guilt such an instruction was improper. Intent may always be proved by circumstantial evidence and frequently can be proved in no other way. The instruction was proper.

People's sixth instruction is objected to for the reason that it, in effect, told the jury that plaintiff in error's evidence was to be treated differently from that of other witnesses. While this instruction was incorrect in that it stated that the jury had a right to take into consideration the fact, if such is the fact, that the defendant had been contradicted by other witnesses, whereas the correct statement of the rule is that the jury may take into consideration the fact, if such is the fact, that the defendant has been contradicted or corroborated by other witnesses, yet we are of the opinion that under all the instructions given, including the fact that no corroborating evidence was offered by her, and the ninth instruction given on behalf of plaintiff in error, which told the jury that they had no right to disregard the testimony of the defendant on the ground, alone, that she is the defendant and stands charged with the commission of the crime, her testimony is to be subjected to the same tests, and only the same tests, as that of any other witness, and that it is to be fairly considered together with all the testimony of the case, the jury could not have been misled by the mis-statement of the rule complained of.

The seventh instruction complained of told the jury that they were not at liberty to disbelieve as jurors if from the evidence they believed as men, and that their oath imposed upon them no obligation to doubt where no doubt would exist if no oath had been administered. Counsel's argument is that this instruction has the tendency to do away with the presumption of innocence and the burden of

proof. The law on the presumption of innocence was fully covered by defendant's instructions Nos. 4 and 5. They cite *People* v. *Schuele,* 326 Ill. 366. In that case the court gave a lengthy instruction on the subject of reasonable doubt, and this court again reminded the trial courts and counsel that they "will do well to heed the advice of this court in many cases in which instructions concerning 'reasonable doubt' have been considered. It is a term which needs no definition and it is erroneous to give instructions resulting in an elaboration of it." Such error has not, however, been held to require reversal.

Counsel also contend that it was error to refuse the first of plaintiff in error's refused instructions. We have examined it in connection with other instructions offered by plaintiff in error and given by the court and find that it has been fully covered in so far as it correctly presented the law.

There is no error in this record requiring reversal of the judgment, and it is affirmed.   *Judgment affirmed.*

Mr. JUSTICE SHAW, dissenting:

I have no serious disagreement with any principle of law stated in the foregoing opinion, but think the result should be a reversal of the judgment and remandment of the cause for a new trial. In my opinion the cumulative effect of the several errors pointed out was such as to deprive the defendant of a fair and impartial trial. This court should be very careful in the application of that principle whereby a judgment is affirmed, regardless of errors, where we think the defendant guilty and that the jury could not have arrived at any other verdict. Surely, if an obviously guilty person can be convicted by such prejudicial means, a person less obviously guilty, and possibly even one entirely innocent, if entrapped by suspicious circumstances, may find himself in the same position. The very application of the

rule places this court in the position of weighing the evidence rather than reviewing the record for errors of law.

In the case at bar the defendant relied upon her own testimony as to her own intent which surely could have been known only by herself. This was the single and controlling issue before the jury, and on that issue she had a lawful right to a verdict by a jury, free from any prejudice against her. The errors pointed out in the opinion were of such a character as to tend to prejudice each juror's mind against the defendant and to prevent the jury, as a whole, from calmly, fairly and impartially weighing her testimony.

HERRICK, C.J., and FARTHING, J., concur in this dissent.