**People of the State of Illinois, Plaintiff-Appellee, v. Andrew Gee (Impleaded), Defendant-Appellant.**

**Gen. No. 53,626.**

First District, First Division.

February 2, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John R. McClory, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Andrew Gee, and Lucius C. Hawkins, were jointly charged in a two-count indictment with having committed the offense of unlawful use of weapons in that they knowingly possessed a bottle containing an explosive substance—gasoline—and in Count II, knowingly possessed a bottle containing an explosive substance—Molotov cocktails—in violation of chapter 38, section 24–1 (a–7) of the 1967 Ill Rev Stats.

At the trial on June 6, 1968, a motion to suppress physical evidence was filed by the defendant, Andrew Gee, and after a hearing it was denied. The defendant then pleaded not guilty and waived a jury trial. He was found guilty of the unlawful use of weapons and

sentenced to one to three years in the Illinois State Penitentiary.

The defendant, Andrew Gee, contends on appeal that he was not found guilty beyond a reasonable doubt because his conviction was based on evidence which was the result of an unlawful search and seizure. He alleges that there was no probable cause for his arrest without a warrant and the search of the car, which accompanied his arrest, thus violated his rights as guaranteed by the Constitutions of the United States and the State of Illinois.

At the hearing on the motion to suppress, defendant, Andrew Gee, testified that he left a barbeque place and was being driven home by another person when they were arrested at 61st and Halsted on April 6, 1968, about 4:00 a. m. They were southbound on Halsted Street when stopped by the police. The defendant testified that "he was not shown any piece of paper by the police when they arrested him." On cross-examination the defendant stated that there had been rioting in that neighborhood the preceding day.

Officer Jacob Pylman testified that he was working on a twelve-hour shift from 6:00 p. m. Friday, April 5, 1968, to 6:00 a. m. Saturday, April 6, 1968. He was in a marked squad car with three other police officers patrolling the general area when a man driving a brown Pontiac stopped them. He told the officers that while in a gas station he heard that two male negroes in a blue Plymouth with Illinois license plates LW9296 had purchased a bottle of gasoline and stated that they were about to start a fire at 63rd and Halsted. The man suggested that the car would shortly come southward down Halsted. On that particular day, following the murder of Dr. Martin Luther King, Jr., there were, according to Officer Pylman, riots, fires, damage of stores and shootings of policemen in that area. When Officer Pylman asked the informer his name, the man

24

replied, "I am a citizen." As the police officers proceeded across Halsted, Officer Pylman observed a blue Plymouth with Illinois license plates LW9296 and two men in the front seat going south on Halsted. When they stopped the car and turned the spotlight on it, the officer saw both persons in the car reach toward the floorboard. Officer Pylman said that because of the rioting he was in fear of his life when he ordered the men out of the car and observed the bottle of gasoline in the middle of the floor.

After the testimony of these witnesses, the motion to suppress was denied and the case proceeded to trial. The parties stipulated that the same questions put to Officer Pylman and his answers at the hearing on the motion to suppress would be substantially the same if asked during the trial. The officer testified further that the bottle was a ten- or twelve-ounce "Old Dutch" pop bottle with a paper towel stuck in its neck. It contained a brown amber liquid which smelled like gasoline. It was in open sight in the middle of the car floor next to where he saw the defendant, who was in the front passenger seat. The bottle was inventoried and taken to the police department crime lab for analysis. Officer Pylman identified the bottle and the towel.

It was also stipulated that if Robert Boese, a chemist employed by the Chicago Police Department, were called as a witness, he would testify that he received the bottle and based upon his examination he found the liquid contained therein to be gasoline. No evidence of fingerprints was found on the bottle.

Andrew Gee, the defendant, took the stand in his own defense. He denied ever seeing the bottle until Officer Pylman brought it back to the police car where he was being detained. He denied reaching toward the floorboard and said he didn't see Hawkins do so when the police stopped them. The defendant testified that when he left the barbeque, Hawkins, whom he had not met

25

before, offered to take him home and he gave Hawkins a dollar to do so. Before they left the barbeque at 59th and Halsted, Hawkins had gone outside for about fifteen minutes alone. They left the barbeque at 4:00 a. m. and were arrested a few minutes later. Officer Pylman testified in rebuttal that he arrested the defendant at 5:00 a. m.

The defendant argues that his arrest was based on mere gossip from an anonymous informer whose reliability was not established. It is urged that there was, therefore, no probable cause for the unwarranted and illegal arrest and search of the defendant. Since the only evidence of the defendant having possession of the bottle of gasoline resulted from that arrest and search, the defendant asks that his conviction be overturned.

■ ■ As stated in People v. McGurn, 341 Ill 632, 635, 173 NE 754, 756:

> The guaranty of the constitution is not against all search and seizure but against unreasonable search and seizure and does not extend to an immunity from search and seizure on lawful arrest. Where a crime has, in fact, been committed and an arrest is made by an officer who has reasonable ground for believing the person arrested is implicated in the crime, such officer has the right to search the person arrested without a search warrant, and in such case the right of search and seizure is incidental to the right of arrest.

In the McGurn case, the defendant was arrested by a police officer who admitted he had no ground to believe or suspect that the defendant had committed a crime. He arrested the defendant only because he had a standing order from a superior to arrest the defendant on sight. Since the only evidence of the defendant's carrying a concealed weapon came from this illegal ar-

rest and the accompanying search, his conviction was reversed.

The Supreme Court in Beck v. Ohio, 379 US 89, 85 S Ct 223, laid down the rule that whether the arrest was constitutionally valid depends on whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

The evidence in Beck showed that the officers stopped the defendant's car without an arrest warrant or a search warrant and placed him under arrest. A search of the car revealed nothing of interest. At the police station the officers searched his person and found a number of clearing house slips under his sock. A motion to suppress this evidence was denied. The Supreme Court found that the evidence of the police officer given at the hearing on the motion to suppress was too meager to uphold the arrest and search. The court found nothing in the record of any indication of what information the officer had received other than that he knew what the defendant looked like and that he had a record in connection with clearing houses and schemes of chance. Someone had told the officer something about the defendant, but there was nothing that would indicate that any informer had said that the defendant could be found at that time and place.

> [W]hen the constitutional validity of the arrest was challenged, it was incumbent upon the prosecution to show with considerably more specificity than was shown in this case what the informer actually said, and why the officer thought the information was credible. 379 US at 97, 85 S Ct at 229.

27

■ In the present case, the prosecution did show with great specificity what the informer actually said and why the officer thought the information was credible. The incident occurred during the time and in the vicinity of the rioting, pillaging and burning which followed the news of the murder of Dr. Martin Luther King, Jr. The officers, while patrolling this general area in a marked police car during the early morning hours of April 6, 1968, were stopped by a concerned person who preferred to remain anonymous. He informed the officers that while in a gas station he had heard that two male negroes had purchased a bottle of gasoline and had stated that they were about to start a fire at 63rd and Halsted. He furnished the police with the license number and a description of the car. He suggested that it would shortly come southward on Halsted. The officers had immediate corroboration of the informer's allegation when they saw the car with the license number and description the informer had given them coming southward on Halsted as he had said it would. The informer's story had proved accurate in its essential details. This hearsay statement to the officers was thus proper to constitute probable cause for an arrest and search without a warrant. Draper v. United States, 358 US 307, 79 S Ct 329.

The police had been told that the defendant and his companion were committing a crime—unlawful use of a weapon—and were about to commit a more serious crime—burning a building with a possible loss of life. The information which the police had and had found to be essentially reliable required immediate action or lives might be lost and property destroyed. The police, as reasonably prudent men in the circumstances would have been, were warranted in the belief that their safety and that of others was in danger and had the authority to search for weapons. Terry v. Ohio, 392 US 1, 27, 88 S Ct 1868, 1883.

In a recent case, In re Boykin, 39 Ill2d 617, 237 NE2d 460, our Supreme Court upheld a conviction for carrying a concealed weapon where the only evidence of the crime was obtained in a search based on an anonymous tip given to the superintendent of a school and relayed by him to the police. In that case, as in the instant one, there was no possible gain to the anonymous informant in giving false information to the police. The police were not required to delay until they ascertained that the informant was in fact anonymous. The court said:

> The constitutions are concerned with the "unreasonable" search, and the reasonableness of a search may, or may not, depend upon the existence of probable cause to make an arrest." 39 Ill2d at 620, 237 NE2d at 462.

From all the circumstances we think the search, if indeed there was a search, since the bottle was in plain view in the car, was a reasonable one and the motion to suppress was properly denied.

We find no merit to the argument that the court prejudiced the defendant by not stating whether he was convicted on one count or both. The evidence was sufficient on both counts.

The judgment of the Circuit Court is affirmed.

Affirmed.

MURPHY and ADESKO, JJ., concur.