THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN WITHERS *et al.*, Defendants-Appellants.

First District (5th Division)   No. 78-461

Opinion filed March 23, 1979.

Ralph Ruebner and Susan McElroy, both of State Appellate Defender's
Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Rimas F.
Cernius, and Marva W. Cohen, Assistant State's Attorneys, of counsel), for the
People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the
court:

After a bench trial, defendants were convicted of armed robbery and

aggravated battery and sentenced to concurrent terms of 20-40 years for the former and 40-120 months for the latter offense. On appeal, the sole contention is that guilt beyond a reasonable doubt was not established because the essential element of a taking was not proved.

It appears that on an afternoon in June, two men—later identified as defendants—alighted from a parked car and proceeded to the second floor apartment of Stella Victor. Moments later, first floor residents of the building heard the sounds of a struggle emanating from her apartment and called the police. Two police officers who came to her front door heard moaning, a cry for help, the firing of a shot, and the shuffling of feet from within the apartment while the third officer, who approached the building from the rear, heard a crash and then saw two men run down the stairs, jump over the first floor railing, and disappear into a gangway. Moments later, Withers was found hiding in the stairwell of the nearby building.

One of the officers testified that when he entered Mrs. Victor's apartment, he observed that her bedroom was in disarray; that she was crying; and that her face was covered with blood, with fresh wet blood on the bed linens. Over objection, the officer was permitted to testify that Mrs. Victor cried out:

> "[T]hey [the defendants] were trying to kill her, they broke in and they beat her up, they kept on hitting her, they wanted her money, she gave, she said she gave them her money. She gave them more money, then they wanted more money. It wasn't enough.
>
> She kept on repeating it saying they said she was, they were going to kill her, that I wouldn't die, but they'd make her die. They kept on hitting her with the gun. They took her bedroom lamp, she said they took her Pa's ring."

Other policemen observed a crowbar, screwdriver, and prybar lying on the dining room floor.

Mrs. Victor's son was summoned from work and arrived while the police were still on the scene. He stated that an antique lamp having a value of between $700 and $1,000, which had always been kept in his mother's bedroom, and a pillowcase from her bed were missing; that later he saw the lamp in the pillowcase on the floor in the kitchen; that the bed had been moved from its regular position; that the bedroom dresser drawers had been opened; that there were blood stains on the bed; and that a screwdriver, crowbar and prybar which did not belong to his mother were lying under furniture in the apartment. Later that afternoon, while tidying the apartment, he found Lamar hiding behind a couch and, when he ran from the apartment, Lamar dropped a paper bag containing a gun.

The 102-year-old Mrs. Victor was bedridden after the incident and died three weeks later.[1]

OPINION

Defendants' sole contention is that the State failed to prove beyond a reasonable doubt that property was taken from Mrs. Victor's person or presence. Although they no longer dispute the admissibility of the testimony of the police officer concerning the statement made to him by Mrs. Victor, they argue that the statement was the only evidence of a "taking" and that it was unreliable in that it failed to divulge "the maker's opportunity to observe, memory for details, and other crucial questions for the trier of fact." We cannot agree.

■■ One commits armed robbery when he takes property from the person or presence of another while armed with a dangerous weapon. (Ill. Rev. Stat. 1977, ch. 38, par. 18—2.) Although the attempt to escape with the proceeds of a robbery are thwarted, the taking is complete when, accompanied with the intent to deprive the owner of it, the property is moved from its customary location. *People v. Baker* (1936), 365 Ill. 328, 6 N.E.2d 665; *People v. Campbell* (1908), 234 Ill. 391, 84 N.E. 1035.

■■ In a bench trial, the weight to be given to the evidence presented is a matter for the determination of the trial court, and a court of review will not substitute its judgment unless the proof is so unsatisfactory as to justify a reasonable doubt of guilt. (*People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126; *People v. Tillis* (1976), 40 Ill. App. 3d 66, 351 N.E.2d 332.) The assertive content of a statement admitted into evidence as an excited utterance, if believed by the trier of fact, will support a conviction particularly where such assertion is corroborated by surrounding circumstances. *People v. Sullivan* (1977), 48 Ill. App. 3d 555, 362 N.E.2d 1313.

Here, Mrs. Victor told police that defendants broke into her apartment; that they beat her with a gun and threatened her with death if she did not give them her valuables. She further asserted that she gave them money and that they took her lamp and a ring. The fact that she *gave* them money in response to physical abuse and threats belies any argument that such money was not taken from her person or presence. Moreover, as Mrs. Victor and defendants were alone in the apartment, it is difficult to understand how she knew that they had taken her bedroom lamp if such had not been done in her presence. Further, her presence in the bedroom when the lamp was allegedly taken is supported by

---

[1] Dr. Robert Stein testified that the cause of death was trauma to the head and chest in association with heart disease. In response to a hypothetical question, Drs. James Hicks and Edward Shalgos testified that there was no relationship between the injuries sustained by decedent and her death.

testimony that her face was bloody; that fresh blood was found on her bed linens; and that the lamp was customarily kept at her bedside.

■■ In addition, it appears clear that the lamp had been removed from the bedside of Mrs. Victor, placed in a pillowcase from her bed, and eventually found in the kitchen near the door through which defendants left the apartment. In her statement to the police officer, the admissibility of which as an excited utterance is no longer contested, she stated that "they [the defendants] had taken her bedroom lamp." In the light thereof, we are of the opinion that there was a sufficient showing of a "taking" of Mrs. Victor's property from her presence (*Baker; Campbell*) and, as this was the only issue raised on appeal, we find no reasonable doubt of defendants' guilt (*Dees*).

For the reasons stated, the judgment is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.