THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD DELK, Defendant-Appellant.

First District (2nd Division)    No. 80-678

Opinion filed May 26, 1981.

James J. Doherty, Public Defender, of Chicago (Emily Eisner and Aaron L. Meyers, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Bruce Rose, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant, Richard Delk, was charged by indictment with unlawfully carrying a shotgun concealed on his person in violation of section 24—1(a)(4) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(4)). Count II of the indictment charged that the alleged unlawful use of weapons occurred within five years of defendant's release from the penitentiary, thus raising the class of the offense charged from a misdemeanor to a Class 3 felony under section 24—1(b) of the Criminal Code. (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(b).) Following a bench trial, defendant was found guilty on the felony count of the indictment and was sentenced to serve a term of 3½ years in the Department of Corrections. From that judgment defendant appeals, presenting the following issues for review: (1) whether the trial court erred in denying defendant's motion to quash the arrest and suppress evidence; (2) whether the

existence of an anonymous informant was adequately shown; (3) whether the trial court conducted an improper examination of the witnesses; and (4) whether there was evidence that the weapon was broken down in a nonfunctioning state and therefore exempt from the proscriptions of the unlawful-use-of-weapons statute. For the reasons hereinafter set forth, we affirm the judgment finding defendant guilty of felony unlawful use of weapons.

Prior to trial, defendant moved to quash his arrest and suppress all evidence obtained from the search following his arrest. At defendant's request, the trial court considered this motion simultaneously with the trial of the offense. The State's sole witness was Chicago police officer Gary Hardt.

Hardt testified that on May 25, 1979, he and his partner Michael Brazel were assigned to patrol duty in the 13th District. At approximately 1:10 a.m. their marked squad car was flagged down by a woman near the intersection of North Avenue, Damen and Milwaukee. The woman, who did not identify herself and was not one of Officer Hardt's paid informants, told Hardt that in front of the J & L Lounge, at 2007 West North Avenue, there was a male black standing in the doorway with a shotgun underneath his army coat. The lounge is located some 60 feet from where the woman stopped the officers. Hardt proceeded northbound on Damen until he reached North Avenue. There he observed a male black in front of the J and L Lounge, wearing a full length army style overcoat. In court Hardt identified defendant as the man he saw standing at the entrance to the lounge. Only 20 to 30 seconds elapsed from the time the woman gave her information to the police until Hardt first spotted defendant.

As Hardt pulled in front of the establishment, defendant turned and entered the lounge. Hardt exited his vehicle and motioned for an unmarked squad car in the area to pull behind him. He then walked into the narrow corridor leading to the lounge and saw defendant attempting to take a shotgun from under his coat and hide it behind a cigarette machine at the end of the bar. This was about 10 seconds after defendant entered the tavern. When Hardt approached him, defendant stood up and started walking towards the officer. Hardt announced his office and ordered defendant to take his hands out of his coat pockets. Defendant complied with this order. While other officers grabbed defendant's hands, Hardt reached inside defendant's coat and retrieved a weapon that was held to defendant's left shoulder by rubber tubing.

Hardt described the weapon as a 16-gauge, blue steel pump shotgun with a sawed-off stock. Immediately after seizing the shotgun, Hardt pumped it to see if it was loaded. It was not loaded, and Hardt then

pulled the trigger. The weapon was inventoried but when Hardt went to the evidence and recovered property section to obtain it for trial, he was advised that the weapon had been destroyed at Inland Steel.

On cross-examination Hardt testified that the unidentified woman did not explain how she knew that the man at the lounge had a gun under his coat. And Hardt admitted that his police report mentioned neither the woman informant nor defendant's effort to conceal the weapon behind the cigarette machine. Hardt characterized the condition of the weapon as rusty and "tight." The officer was able to pump the gun only with some difficulty and "had to struggle with it a little bit" to operate it. On redirect examination Hardt testified that the police report was merely a summary of the facts and not a detailed report. He testified further that he personally had operated the weapon.

At the conclusion of Hardt's testimony, the parties stipulated that on December 17, 1972, defendant was sentenced to serve one to 10 years in the Indiana State Penitentiary for the offense of theft by threat. Defendant was paroled on December 10, 1975, having served approximately three years of his sentence. The State rested and defendant's motion for a directed finding was denied.

Sharon Roudez, defendant's former girlfriend, testified that she was with defendant at the time of his arrest. Roudez stated that the police searched both defendant and herself, emptying the contents of her purse onto the floor of the tavern. Before the police searched defendant, Roudez had not seen defendant in possession of any weapon. She never saw defendant trying to secrete a weapon behind the cigarette machine. On cross-examination Roudez stated that at the time of his arrest defendant was wearing a green army jacket.

The trial court then examined the witness and asked her to describe more precisely the physical layout of the lounge and the relative positions of the persons present on the scene. Roudez told the court that when the police arrived, one of them asked defendant where he was going. Defendant answered, "We are leaving. We are going out," whereupon the officers searched both defendant and Roudez. It was at that point that Roudez saw a weapon which she described as a shotgun on defendant's person. Shortly after the court completed its questioning, the defense rested.

The trial court recalled Officer Hardt to the stand. Reminding the officer that he was still under oath and had sworn to tell the truth, the court asked Hardt where in the lounge he had recovered the gun. After Hardt answered, the court asked if the gun was recovered in the presence of Roudez. Hardt responded affirmatively. The court then questioned Hardt as follows:

"Q. Are you saying under your oath to God that a woman, unknown woman told you that there was a person with a—

A. Long green army coat, standing outside the tavern in front of the J and L Lounge, 2007 West North Avenue. I have never seen the woman before.

Q. What did she say about that person?

A. That he had a gun under his coat and that he was by the J and L Lounge. 'You can't miss him,' or words to that effect.

Q. You did not get her name?

A. No sir, I did.

\* \* \*

Q. Did you send out anything over the air with respect to what the woman had told you?

A. No, sir, I didn't.

Q. Why didn't you put that in your police report that a woman told you a man had a gun?

A. The only thing I can say it is human error.

Q. You are telling me, under your oath to God, that that woman did tell you exactly what you related to me?

A. Yes, sir, that is how I came to be at the J and L Lounge that night."

For purposes of defendant's motion to suppress, the trial court accepted as true Roudez' testimony that defendant did not try to hide the shotgun behind the cigarette machine. The court found, therefore, that Officer Hardt did not see the weapon before he searched defendant. The court, however, did make a specific finding of fact that there was an unidentified woman on the street who had had a conversation with Officer Hardt, the details of which he later related at trial. The court found that there was no evidence that the woman was an informant or special employee of the police. For that reason her credibility did not have to be determined in the same manner as a paid informant. The officer's failure to mention the woman in his report was attributed to the fact that "officers are not legal technicians who know the importance of stating certain relevant facts which would be relevant to lawyers" on the question of probable cause.

The court found further that the unidentified woman's information was independently corroborated by the personal observations of Officer Hardt. The court concluded that there was probable cause for the search of defendant and the seizure of the weapon from his person. Defendant's motion was denied. Defendant was found guilty of felony unlawful use of weapons and was sentenced to serve 3½ years in the Illinois Department of Corrections.

## I

Defendant contends that the trial court erred in denying defendant's motion to quash his arrest and suppress evidence that he was carrying a concealed weapon because "a bald allegation from an anonymous informant is palpably insufficient to support a finding of probable cause" and an anonymous informant is not entitled to the presumption of reliability accorded ordinary citizens.

Probable cause to arrest exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed (*Brinegar v. United States* (1949), 338 U.S. 160, 175-76, 93 L. Ed. 1879, 1890-91, 69 S. Ct. 1302, 1303-04; *People v. Henderson* (1981), 96 Ill. App. 3d 232, 421 N.E.2d 219.) In determining whether probable cause exists where an arrest is based on hearsay information, the allegations which are offered as supporting probable cause must satisfy a two-pronged test: "The information presented must indicate both (1) the underlying circumstances establishing the reliability of the *person* providing the information, and (2) the underlying circumstances establishing the reliability of the *informant's conclusion* that the defendant was engaged in criminal activity. (See *Aguilar v. Texas* (1964), 378 U.S. 108, 114, * * *.)" *People v. Garcia* (1981), 94 Ill. App. 3d 940, 945.

■■ In Illinois the first prong of the *Aguilar* test is met where the informant is an ordinary citizen. (*People v. Hester* (1968), 39 Ill. 2d 489, 514, 237 N.E.2d 466.) Defendant acknowledges this authority but contends that the citizen-informant doctrine does not apply unless the informer is identified, citing *People v. Martin* (1977), 46 Ill. App. 3d 943, 954, 361 N.E.2d 595. Since the informant in the instant case was not identified, defendant contends that the informant is not entitled to the presumption of reliability accorded ordinary citizens. We find, however, that defendant's contention is not supported by the applicable case law. For example, in *People v. Isenberg* (1977), 52 Ill. App. 3d 426, 367 N.E.2d 364, the court said that "Absent any contrary indication from which we might conclude that the informant in this case was a professional police informant, we hold that he was an ordinary citizen * * *." (*Isenberg*, at 428; see also *People v. Hoffman* (1970), 45 Ill. 2d 221, 222-23, 258 N.E.2d 326; *People v. McElroy* (1976), 44 Ill. App. 3d 1047, 1050, 358 N.E.2d 1180; *People v. Butler* (1973), 12 Ill. App. 3d 541, 545, 298 N.E.2d 798.) Moreover, the *Martin* opinion, on which defendant relies, recognizes an exception that is applicable here. Quoting from a Washington State appellate court opinion, *State of Chatmon* (1973), 9 Wash. App. 741, 748 n.4, 515 P.2d 530, 535 n.4, the *Martin* court said that " '[w]here eyewitnesses to crime summon

the police, and the exigencies are such (as in the case of violent crime and the imminent possibility of escape) that ascertainment of the identity and background of the informants would be unreasonable, the 'reliability' requirement might be further relaxed." 46 Ill. App. 3d 943, 952-53.

■■ In the instant case an unidentified citizen informant warned the police that there was a man standing in front of a tavern with a shotgun concealed under his long green army coat. In our judgment it would be irresponsible to insist that the police refrain from responding to the immediate and obvious danger such a situation posed until after they had interviewed the citizen and had determined whether she was in fact an "ordinary citizen." An emergency situation similar to the one in the case at bar was present in *People v. McElroy.*

In *McElroy* two police officers responded to a radio call of a woman with a gun in the area of 3816 West Maypole. When the officers arrived at that location, they found defendant and another woman on the street. One of the officers concluded that the woman accompanying defendant was not concealing a weapon because she was wearing a blouse and pants and was not carrying a purse. The officer then approached defendant who was carrying a purse and asked her if he could search her purse. She became hostile, told the officers they would have to arrest her before they could search her purse and attempted to leave the scene. She was arrested and en route to the police station she was asked if she had a gun in her purse. She admitted that she did, whereupon the officers searched her purse and found a fully loaded revolver and several small bags of marijuana. On appeal the court held that, based on the totality of the circumstances, the police had reasonable grounds to believe that defendant possessed a gun and that there was probable cause for her arrest. The court rejected the defendant's argument that the radio call lacked indicia of reliability:

> "Here, the police were acting through a radio call upon information apparently received from an anonymous tipster which, if correct, presented an immediate and real danger to the public. The potential of a criminal offense required prompt police action to prevent possible serious harm. Therefore, considering these exigencies, we believe police acted reasonably on the facts available to them in responding to the call and proceeding without attempting to further establish the reliability of the tipster." *McElroy,* at 1050.

The nature of the potential danger where a deadly weapon may be present differs from that involved in gambling and narcotics cases. (*In re Boykin* (1968), 39 Ill. 2d 617, 619, 237 N.E.2d 460; *People v. Gee* (1970), 121 Ill. App. 2d 22, 28-29, 257 N.E.2d 212; *People v. Smithers* (1980), 83 Ill.

2d 430, 439, 415 N.E.2d 327.) This difference serves to distinguish the two cases on which defendant relies, *People v. Parren* (1962), 24 Ill. 2d 572, 182 N.E.2d 662, and *People v. Pitts* (1962), 26 Ill. 2d 395, 186 N.E.2d 357. Indeed, *Parren* acknowledged that in a "pressing emergency" an arrest could be based solely on information provided by an anonymous informant. *Parren*, at 576.

Defendant, however, contends that even if the unidentified woman is considered an ordinary citizen, there was no probable cause for his arrest, citing *People v. Garcia*. There we observed:

"[N]othing in the cases in which the 'ordinary citizen' presumption is applied disposes of the necessity that the second prong of the *Aguilar* test be met. Thus, the State must still show the underlying circumstances which led the informant to believe that the defendant was involved in a crime. Information, though it comes from an ordinary citizen, cannot serve as a basis for a finding that probable cause exists where that information is purely conclusory and does not detail any of its underlying circumstances." 94 Ill. App. 3d 940, 946.

■■ Since the citizen informant in the case at bar did not explain how she knew that defendant was carrying a concealed shotgun on his person, defendant argues that the police lacked probable cause to arrest him. It is apparent from the facts presented at trial, however, that the arrest was not based solely on "a bald allegation from an anonymous informant" as defendant alleges. Less than half a minute after the police spoke with the woman on the street they were able to corroborate through their own observations every detail of the woman's report except for the statement that defendant had a concealed weapon on his person. Corroboration of that statement was not critical, because in determining whether an informant's account is entitled to credence the police may rely on the corroboration of facts which in themselves are neutral and not necessarily suggestive of criminal activity. *Draper v. United States* (1959), 358 U.S. 307, 313, 3 L. Ed. 2d 327, 332, 79 S. Ct. 329, 333; *People v. Mc Fadden* (1965), 32 Ill. 2d 101, 103, 203 N.E.2d 888; *People v. Faulisi* (1977), 51 Ill. App. 3d 529, 531, 533, 366 N.E.2d 1072.

Our own research has disclosed several cases which present facts similar to those in the case at bar. In *People v. Chavers* (1974), 20 Ill. App. 3d 889, 314 N.E.2d 522 (abstract), the arresting officers received a radio communication that there were three men in the street with guns at 6918 South Dante in Chicago and that one of the men was wearing yellow trousers. When the officers arrived at that location one minute later, they observed defendant and two companions, one of whom was wearing yellow pants. No other persons were present. The court held that the arresting officers had probable cause to stop and search the defendant

and his companions. In *People v. Vanable* (1973), 11 Ill. App. 3d 758, 298 N.E.2d 299 (abstract), two Chicago police officers working an undercover detail in an unmarked vehicle were stopped at the intersection of 63 and California at 3 a.m. by an unknown man who told the officers that a male Negro with a gun in his possession had just turned the corner going north on California. The officers proceeded north on California and saw the defendant, alone, walking north on the street. The officers alighted from their vehicle, displayed their badges and announced their office. Defendant turned and pulled a gun out of his coat and pointed it at the officers. The police told defendant to drop his weapon, and defendant threw it underneath a parked car and attempted to flee. On appeal defendant argued that "the sole information in possession of the officers as they approached defendant was the alleged 'unreliable, uncorroborated' statement of the informer and that this was not enough to establish probable cause for the arrest." The court rejected defendant's argument, finding that the officers' own observations of the defendant before he displayed a weapon served to corroborate the informant's statement and thereby establish probable cause for the defendant's arrest. For that reason, defendant's weapon which was recovered as a result of the arrest was properly admitted into evidence.

Based on our review of the evidence in this case and the applicable case law, we believe that the officers had probable cause to arrest the defendant and search him for a concealed weapon. Evidence that defendant was carrying a shotgun under his coat was, therefore, properly admitted by the trial court.

## II

Defendant contends that Officer Hardt's testimony regarding the anonymous woman informant was incredible principally because Hardt failed to mention her in his police reports. Defendant has supplemented the record with copies of both the original and supplementary case reports. Neither report was signed by Officer Hardt, and the State, citing *People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098, argues that an officer cannot be impeached by a report he neither prepared nor signed. In his testimony, however, Hardt admitted that he had submitted a signed police report that contained no reference to any informant. Whether Hardt was referring to one of the reports which defendant had included in the record on appeal or another report not before us, we believe it is apparent from Hardt's trial testimony that even if he did not sign any of the reports he assisted in preparing them and could be held accountable for their contents. *People v. Zazzetti* (1972), 6 Ill. App. 3d 858, 861, 286 N.E.2d 745.

The State and defendant have argued at length whether Officer

Hardt was impeached by omitting a material fact from his police reports. We believe this was properly a matter for the trial court sitting as the trier of fact to decide. (*People v. Withers* (1979), 69 Ill. App. 3d 568, 570, 387 N.E.2d 1007.) Although defendant has cited *People v. Henry* (1970), 47 Ill. 2d 312, 265 N.E.2d 876, for the proposition that a material omission "cannot * * * be disregarded by the trial court as lacking impeachment value," the issue in *Henry* was not whether a material omission could be disregarded but whether the defendant had laid a proper foundation to ask the impeaching question. The supreme court held that he had and remanded the case for a new trial. In the case at bar, however, defendant was allowed to complete his cross-examination and impeachment, and it was up to the trial court to determine its significance.

■■ All of the arguments defendant now raises were or could have been addressed to the trial court. Nevertheless, despite defendant's vigorous cross-examination of Officer Hardt, the trial court specifically found that the unidentified woman informant did in fact exist. The evaluation of Officer Hardt's credibility was peculiarly within the province of the trial court which heard Hardt testify and observed his demeanor under oath. We cannot find as a matter of law that the trial court's determination of Officer Hardt's credibility was against the manifest weight of the evidence.

### III

Defendant argues further that he was deprived of his right to a fair and impartial trial because the trial judge departed from his proper function as the impartial trier of fact and assumed the role of an advocate for the State in examining both Officer Hardt and Sharon Roudez. The examination of which defendant complains is set out at the beginning of this opinion.

In *People v. Costello* (1981), 95 Ill. App. 3d 680, 420 N.E.2d 592, we summarized the principles applicable in reviewing defendant's claim of prejudice:

"It is clear that a trial judge has the right to question witnesses in order to elicit the truth or to bring enlightenment on material issues which seem obscure, (*People v. Palmer* (1963), 27 Ill. 2d 311, 314, 189 N.E.2d 265; *People v. Wesley* (1959), 18 Ill. 2d 138, 155, 163 N.E.2d 500), or to clarify ambiguities in the witness' testimony (*People v. Rogers* (1st Dist. 1974), 18 Ill. App. 3d 940, 943-44, 310 N.E.2d 854). The propriety of such examination must be determined by the circumstances of each case and rests largely in the discretion of the trial court. (*People v. Palmer*, 27 Ill. 2d at 315; *People v. Trefonas* (1956), 9 Ill. 2d 92, 100, 136 N.E.2d 817.) This is

especially true where the cause is tried without a jury and the danger of prejudice lessened. *People v. Palmer*, 27 Ill. 2d 315."

As in *Costello*, we have examined all the questions asked by the trial judge and find that they did not exceed the bounds of propriety. Defendant's objection to the court's examination of Officer Hardt is that it was "not to have him clarify his testimony, but to make him 'swear under oath to God' that he was telling the truth and to thereby support the allegation against defendant." Citing *People v. Cofield* (1973), 9 Ill. App. 3d 1048, 293 N.E.2d 692, defendant contends that "questioning of the witness in order to awaken his conscience to speak the truth exceeded the bounds of judicial propriety." *Cofield*, however, is readily distinguishable from the case at bar.

In that case, a prosecution for contributing to the sexual delinquency of a child, the trial judge asked the 13-year-old victim if the defendant had touched her. After she said he had not done so, the court excused her and called the investigating officer who, in response to the court's questioning, testified that the victim had complained of the defendant grabbing her. The court interrupted the officer and recalled the victim and asked her if she had made the statement attributed to her by the investigator. She said that she had, whereupon the judge asked, "Why are you lying to me now?" He reminded her that she was under oath and again asked if defendant had touched her. The trial judge explained that he was confronting the witness with her statement to the officer, and he further stated that he would "send her to the Audy Home and take her in custody" if she did not tell the truth. The victim insisted that the defendant had physically assaulted her.

Both the nature and the extent of the trial court's examination of the witnesses in *Cofield* are markedly different from that present here. In *Cofield* the appellate court noted that "The trial judge called the State's witnesses, conducted the examinations and asked questions directed at eliciting testimony to support the allegations against the defendant. The trial judge apparently called the police officer as a witness to refresh the recollection, or to seek to awaken the conscience of the victim to speak the truth." The court concluded that the trial judge had "acted as prosecutor and judge, and thus exceeded the grounds of judicial propriety. [Citations.]" (*Cofield*, at 1051.) Error of a similar magnitude was present in *People v. McGrath* (1967), 80 Ill. App. 2d 229, 234-236, 224 N.E.2d 660, also cited by defendant. We believe the trial judge's questioning of officer Hardt was aimed at eliciting the truth and was therefore proper. *People v. Palmer* (1963), 27 Ill. 2d 311, 314.

With respect to the trial judge's examination of Sharon Roudez, we believe it was directed at clarifying the physical layout of the lounge and

the positions of the persons present when the police arrived and searched defendant. We are unable to perceive how defendant was prejudiced when the trial judge ascertained from Roudez that she observed defendant with a weapon which appeared to be a shotgun after the police searched him. The trial court did not, in our judgment, attempt to "fill in critical gaps in the State's case," as defendant asserts.

■■ Upon our review of the entire record we do not find that the trial judge's examination of the witnesses in this case exceeded the bounds of judicial propriety. Accordingly, we hold that defendant was not deprived of his right to a fair and impartial trial.

## IV

Finally, defendant contends that he was not proven guilty of knowingly carrying a concealed weapon on his person because the weapon was broken down in a nonfunctioning state and therefore exempt under subsection 24—2(b)(4) of the Criminal Code of 1961.

■■ The subsection of the unlawful-use-of-weapons statute of which defendant has been convicted (section 24—1(a)(4)) does not apply to "transportation of weapons broken down in a non-functioning state * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 24—2(b)(4).) This exemption, like all of the statutory exemptions to the Act, is not an affirmative defense. When a defendant introduces some evidence of an affirmative defense, the burden is on the State to prove that issue, together with all other elements of the offense, beyond a reasonable doubt. In the case of an exemption, however, it is the defendant's burden to prove by a preponderance of the evidence that he is entitled to the exemption. (Ill. Rev. Stat. 1977, ch. 38, par. 24—2(g); *People v. Smith* (1978), 71 Ill. 2d 95, 105, 109, 374 N.E.2d 472.) For purposes of raising the issue it is not important whether the defendant or the State presents facts to support the exemption as long as the facts are presented to the trial court sometime during the trial. *People v. Staples* (1980), 88 Ill. App. 3d 400, 403-04, 410 N.E.2d 592; *People v. Reed* (1979), 72 Ill. App. 3d 405, 408-09, 390 N.E.2d 962.

Defendant claims that he met his burden to prove by a preponderance of the evidence that he is entitled to the "non-functioning state" exemption because of Officer Hardt's testimony that the shotgun was rusty, unloaded and difficult to pump. Hardt, however, never testified that the weapon was inoperable. Although the shotgun was rusty and the action "tight," and Hardt "had to struggle with it a little bit" to move the pumping mechanism, nevertheless the officer did succeed in operating the weapon. Moreover, even if the weapon was inoperable, that alone would not prove the statutory exemption.

■■ For the exemption to be applicable the gun must be not only nonfunctioning but also broken down. (*People v. Worlds* (1980), 80 Ill.

App. 3d 628, 632, 400 N.E.2d 85.) The words "broken down" refer to a disassembled weapon. (*Worlds*, at 632; *People v. Strompolis* (1971), 2 Ill. App. 3d 289, 292, 276 N.E.2d 464.) In *Worlds* the court held that a weapon which was rusty, inoperable and missing a handle was "broken down in a non-functioning state" and could not therefore be considered a deadly weapon.

In *People v. Halley* (1971), 131 Ill. App. 2d 1070, 268 N.E.2d 449, cited by defendant, the court concluded that "To establish a violation of the statute prohibiting the carrying of a firearm, it is sufficient to show that the weapon possessed the outward appearance and characteristics of such pistol, revolver or other firearm; it is immaterial that such weapon is not loaded, has no firing pin or open barrel, or is otherwise inoperable." (*Halley*, at 1073. See also *People v. White* (1975), 33 Ill. App. 3d 523, 530, 338 N.E.2d 81.) In the case at bar there was no evidence that the weapon was "broken down in a non-functioning state."

Defendant, however, notes that through no fault of his own the weapon siezed by the officers was destroyed at Inland Steel and was not available for examination at trial. Defendant does not raise an issue regarding the nonproduction of the gun or allege spoliation of evidence but insists that in the absence of the gun Officer Hardt's testimony was insufficient to prove that "the instrument was a firearm." We cannot concur with defendant's conclusion.

██ In light of Officer Hardt's experience on the police force and his familiarity with weapons, we believe the trial court could accept the officer's testimony describing the characteristics of the object he seized from defendant and find that it was a deadly weapon. The failure of the prosecution to introduce a weapon at trial does not impair an officer's credibility or raise a reasonable doubt of defendant's guilt. (*People v. Ortiz* (1973), 18 Ill. App. 3d 431, 434, 305 N.E.2d 418, citing *People v. Herrera* (1972), 6 Ill. App. 3d 898, 900, 287 N.E.2d 87.) While we strongly disapprove of the State's action in destroying the gun, whether intentionally or inadvertently (*People v. Ellis* (1981), 93 Ill. App. 3d 79, 83, 1174 N.E.2d 652), we do not believe that the destruction of the gun in this case was prejudicial to the defense where there was no evidence that the gun was broken down and inoperable.

In our opinion defendant was properly found guilty of felony unlawful use of weapons. The judgment of the circuit court of Cook County is therefore affirmed.

Affirmed.

STAMOS and DOWNING, JJ., concur.