THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY WAYNE FREEMAN, Defendant-Appellant.

Third District   No. 3—90—0651

Opinion filed September 27, 1991.

Kim L. Kelley, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant was charged with misdemeanor unlawful use of weapons (Ill. Rev. Stat. 1989, ch. 38, par. 24—1(a)(4)). After a jury trial, he

was found guilty as charged and sentenced to one year's probation. Defendant appeals his conviction on the ground of ineffective assistance of counsel. We affirm.

At defendant's arraignment on July 19, 1989, defendant was found to be indigent. The public defender was appointed to represent him, and a request for a jury trial was made. Between the date of his arraignment and November 8, 1989, the date set for defendant's trial, defendant was represented at various times by three different assistant public defenders. On November 8, defendant appeared in court with his fourth assigned counsel, assistant public defender Collette Bailey. It was her first criminal jury trial. Defendant expressed his dissatisfaction with trial counsel generally and said that he needed more time to prepare his case. The court granted a continuance despite Ms. Bailey's assertion that she was prepared to proceed with the trial.

Ultimately, the matter was brought to trial on February 14, 1990. According to the State's witnesses, around 1 a.m. of July 19, 1989, defendant approached two parked squad cars occupied by Peoria police officers Dwight Borneman and Gene Van Antwerp. The officers were on routine patrol and had stopped to chat at a gas station near the Heart of Illinois fair, which had just closed for the evening. Defendant positioned himself between the two cars and asked for a light, but both officers said they did not smoke and could not help him. According to the officers, defendant was dressed shabbily, had his shirt tails hanging out, needed a bath and smelled of alcohol. Defendant attempted to strike up a conversation, but the officers asked him to leave. Borneman testified that defendant then walked over to the station building by the pay phone and glared back at them.

The officers decided that because of the late hour and the fact that the gas station was closed they should find out what defendant was up to. They walked over to him and asked a few questions. Defendant indicated he was going to call for a ride home. Defendant made an attempt, but apparently was unsuccessful. Van Antwerp continued the discussion, and defendant became upset and began gesturing with his arms in the air. This action brought defendant's shirt up over his belt and exposed a mini revolver holstered in the belt buckle. Borneman drew his weapon, announced to Van Antwerp that defendant had a gun, and then Van Antwerp handcuffed defendant while Borneman recovered the belt and gun.

Borneman further testified he had once owned just such a mini revolver and was familiar with its parts and operation. He said that he

checked the gun for ammunition and found it empty. He also pulled the trigger, saw the hammer fall and determined that the gun was operational. Borneman said that the weapon is composed of three main parts and that if it is disassembled further it is extremely hard to put back together as it tends to fall apart.

Van Antwerp testified that after Borneman had taken the gun and belt from defendant, Van Antwerp conducted a test to determine if the gun was functional. He said he "dry fired" it by cocking the hammer and pulling the trigger 10 times. In Van Antwerp's opinion, the gun functioned "easily." Van Antwerp stated that defendant said there was supposed to be a piece missing, but that the only thing Van Antwerp could see missing was the bullet. On cross-examination, Van Antwerp stated that it was his opinion that if a piece had been missing from the gun it would not have functioned.

After the State rested, defendant took the stand in his own defense. He testified that he had dressed up in a fancy, thin, white dress shirt, dress slacks and cowboy hat to attend the Heart of Illinois Fair on the night in question. He said he had worn the belt and gun on the outside with his shirt tucked in and had received comments on it from security guards at the beer tent at the fair. It was the first time defendant had worn the gun and belt in public. Defendant further testified that he had spent two to three hours at the beer tent that night. Defendant admitted that the cylinder and pin were in the gun, but he denied that all parts of the gun were intact.

After the close of all evidence, but before closing arguments, defendant told the court out of the jury's presence that he did not believe he was receiving adequate representation from Ms. Bailey. Defendant stated that he wanted to prove that the gun was nonfunctioning because he had removed a certain piece from it. Ms. Bailey expressed her opinion that the case law did not support the defense defendant wished to present and that her strategy was to limit the theory of defense to the effect that defendant did not knowingly conceal the weapon. The court denied defendant's motion to discharge appointed counsel, but stated that the issue could be raised again in post-trial proceedings.

In closing argument, Ms. Bailey urged the jury to find defendant not guilty on the ground that the evidence failed to establish that defendant had concealed the weapon. The jury returned a guilty verdict.

The court appointed new counsel to represent defendant in his post-trial motion. After an extensive hearing, the motion was denied, and defendant brings this timely appeal.

Defendant initially argues that trial counsel was ineffective because she failed to present a viable defense, *i.e.*, that defendant lacked the requisite mental state to commit the offense charged because he had been told by former assistant State's Attorney Verne Dentino that it was not illegal to carry the mini gun in a belt buckle.

The test on review for a challenge to the competence of trial counsel is whether counsel's representation was actual incompetence which deprived defendant of a fair trial and resulted in substantial prejudice without which the outcome of the trial would probably have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) There is a strong presumption that counsel's conduct fell within the wide range of reasonable representation (*People v. Kinzer* (1991), 214 Ill. App. 3d 790, 795, citing *People v. Mack* (1984), 105 Ill. 2d 103, 473 N.E.2d 880), and matters of professional judgment, discretion and trial tactics which involve hindsight evaluation are not grounds for a finding of incompetency. *People v. Johnson* (1978), 63 Ill. App. 3d 745, 380 N.E.2d 531.

■ In this case, Ms. Bailey testified during post-trial proceedings that she interviewed Dentino, and that his recollection of his conversation with defendant differed materially from that reported by defendant. Rather than presenting a witness who would effectively challenge defendant's credibility on an alternative defense, Bailey decided to stick to the theory that the gun was not concealed. Moreover, counsel's decision not to solicit defendant's testimony about his belief that he was not carrying the gun illegally was a matter of sound trial tactics because Dentino was as available to the State as a witness as he was to the defense. By effectively rebutting defendant's testimony regarding this conversation, the State could have weakened defendant's credibility even more. Based on the record before us, we cannot say that counsel's decision to reject the potential defense demonstrated incompetency rather than reasonable trial strategy.

■ Next, defendant argues that trial counsel was incompetent for having failed to secure expert testimony in support of defendant's theory that the gun was "broken down and inaccessible." A statutory exemption for weapons "broken down in a non-functioning state or not immediately accessible" is provided in section 24—2(b)(4) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 24—2(b)(4)). Such exemption is not an affirmative defense, but must be proved by defendant by a preponderance of the evidence. Ill. Rev. Stat. 1989, ch. 38, par. 24—2(h).

In *People v. Delk* (1981), 96 Ill. App. 3d 891, 903, 421 N.E.2d 1341, 1350, citing *People v. Halley* (1971), 131 Ill. App. 2d 1070, 268

N.E.2d 449, the court clarified that an offense under the deadly weapons act may be established upon a showing that the firearm possessed the outward appearance and characteristics of a gun even though it may be rusty, missing a firing pin or otherwise inoperable. It is not sufficient to show merely that the gun is inoperable—defendant must establish as well that the gun was also broken down. Testimony in *Delk* established that the sawed-off shotgun in that case was "rusty, unloaded and difficult to pump." Nonetheless, the court on review ruled that the testimony did not establish that the weapon was both nonfunctioning and disassembled, or broken down.

Ms. Bailey testified during the post-trial proceedings in this case that she had researched defendant's proposed defense in this regard. She determined, based on the status of Illinois case law, that the mere fact that defendant alleged that he had removed a small spring to render the gun incapable of shooting, as it was designed to shoot, would not be sufficient to entitle defendant to an instruction on the exemption. We note that Officer Van Antwerp testified that he had "dry-fired" defendant's gun and that, although unloaded, it was a functioning weapon. This was corroborated by Officer Borneman. Even if defendant had rebutted the officers' testimony with expert testimony respecting the weapon's functioning, the evidence established that the gun was new, appeared intact and had the outward appearance of a gun. (See *Delk*, 96 Ill. App. 3d 891, 421 N.E.2d 1341.) Under the circumstances, we do not find that trial counsel's decision to forego this alternative defense falls outside the purview of reasonable trial strategy.

■ Next, defendant contends that trial counsel was ineffective for failure to call witnesses who had seen defendant at the fair on the night in question and could corroborate that he was wearing his shirt tucked in with the gun and belt buckle exposed. We reject this argument because the record does not disclose that any such witness was identified; and even if such witnesses were available, their testimony regarding defendant's dress at the fair would not directly rebut the State's evidence of his disheveled appearance later that evening. Accordingly, we attribute trial counsel's decision not to introduce such witnesses to professional judgment.

■ Lastly, defendant charges that the cumulative effect of trial counsel's errors during her first criminal jury trial were such as to deprive him of effective assistance of counsel. We have carefully reviewed the record of this trial and do not agree. Suffice it to say, defense counsel proceeded with a plausible trial strategy regardless of its ultimate lack of success. Her evaluation of the relative strengths of

potential theories of defense and her decision to limit the issue before the jury to that of concealment were not unreasonable. We cannot say that but for counsel's errors the result of the trial would have been different.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

STOUDER, P.J., and HAASE, J., concur.